**Ruby D. SPENCER, on Behalf of Rufus SPENCER, Plaintiff-Appellant,**

v.

**Margaret M. HECKLER, Secretary of Health and Human Services, Defendant-Appellee.**

**No. 84–7755**
**Non-Argument Calendar.**

United States Court of Appeals, Eleventh Circuit.

July 16, 1985.

R. Michael Booker, Birmingham, Ala., for plaintiff-appellant.

Frank Donaldson, U.S. Atty., Mark Tippens, Birmingham, Ala., for defendant-appellee.

Before GODBOLD, Chief Judge, KRAVITCH and HATCHETT, Circuit Judges.

PER CURIAM:

Ruby D. Spencer appeals the denial of disability benefits for her deceased husband, Rufus Spencer.[1] Mr. Spencer brought this action pursuant to section 205(g) of the Social Security Act (Act), 42 U.S.C. § 405(g), and section 1631(c)(3) of the Act, 42 U.S.C. § 1383(c)(3), seeking review of a final decision of the Secretary of Health and Human Services (Secretary) denying his application for disability insurance benefits and supplemental security income.[2] Because we find that the Secretary's determination was not supported by substantial evidence, we reverse.

## I. BACKGROUND

Rufus Spencer was born in 1939 and completed the eleventh grade in school. His past relevant work was as an inspector of valve fittings, a job which involved lifting as much as sixty pounds on a regular basis, standing approximately five hours a day, and sitting approximately three hours a day.

The Administrative Law Judge (ALJ) summarized claimant's medical history as follows:

> The medical evidence of record reveals that the claimant was admitted to Carra-

---

1. Mr. Spencer died on September 18, 1984, of cardiopulmonary arrest. On November 21, 1984, plaintiff filed a Motion for Substitution of Parties in the court below which subsequently was granted.

2. Claimant originally applied for benefits on July 6, 1982. The Secretary denied the applica-

tion both initially and on reconsideration. On December 21, 1982, a hearing was held before an administrative law judge who determined that claimant was not disabled within the meaning of that term in the Social Security Act and regulations issued thereunder.

way Methodist Hospital on December 9, 1981, after having experienced substernal chest pain with diaphoresis and nausea. In the emergency room, he experienced a short run of ventricular tachycardia and became totally unresponsive. He was cardioverted and returned to normal sinus rhythm. Coronary angiography revealed near complete occlusion of the proximal left anterior descending coronary artery and a large area of anterolateral apical akinesis. A repeated coronary angiogram revealed only a small area of akinesis with remarkable improvement of the left ventriculogram. The claimant underwent percutaneous transluminal coronary angioplasty of the left anterior descending artery on December 29, 1981. He remained entirely asymptomatic throughout the remainder of his hospital course. He was discharged on January 3, 1982. Subsequently, on December 12, 1982, the claimant experienced severe anterior chest pain radiating across the left lower chest with shortness of breath, but no nausea or vomiting. The pain was unrelieved by nitroglycerin and the claimant was rehospitalized. He underwent coronary artery bypass grafting to the left anterior descending artery. The claimant was discharged on December 27, 1982. He was seen for a followup on March 18, 1983, at which time he was essentially asymptomatic. Specifically, he denied chest pain or dyspnea on exertion. Emergency department records from Carraway Methodist Medical Center, dated March 23, 1982, reveal that claimant was seen on that day complaining of 30 to 60 minute history of dull aching pain in the upper chest. While in the emergency room, he developed fibrillation. He was diagnosed as having had either an acute anterior myocardial infarction or ventricular fibrillation.

The evidence in the record consists of records from claimant's hospitalization and clinic treatments, a letter from claimant's treating physician, a report from a non-examining physician, claimant's testimony at the hearing before the ALJ, and the testimony of a vocational expert at the hearing. Richard P. McLaughlin, M.D., claimant's treating physician, wrote a letter summarizing claimant's medical history, noting that claimant still suffered from chest pain associated with exercise, and concluding that claimant was "disabled due to coronary artery disease, acute myocardial infarction and post bypass angina." The report from the non-examining physician was by Richard Carter, M.D., a State Agency staff physician. The report consisted of a preprinted form on which Dr. Carter had checked blanks indicating that claimant's "most reasonable lifting and/or carrying expectation" was "50 pounds occasionally to 25 pounds frequently," that during a normal workday claimant could stand and walk six or more hours and could sit and work as much as six out of eight hours. None of the other restrictions listed on the form were checked off. The only sentence that Dr. Carter wrote on the form was that claimant had undergone bypass surgery with excellent results. At the hearing, claimant testified that three to four times a week he suffered from sharp chest pains that lasted from forty-five minutes to an hour. These pains occurred at rest or with exertion. Claimant also stated that he had numbness in his leg, that he tired very easily, that he vomited often, that he had been told not to do any lifting by his doctor, and that he became dizzy when he bent over. The only other testimony at the hearing was that of John Seymour, a vocational expert. Seymour testified that the claimant's prior job consisted of heavy work at a semi-skilled level. In response to hypothetical questions posed by the ALJ, Seymour listed jobs that someone with claimant's age and education would be capable of performing if that person could perform medium level work, light work, or sedentary work. In all three instances, Seymour concluded that there were jobs that claimant could perform. In response to hypothetical questions posed by Spencer's attorney, Seymour stated that claimant would not be able to secure work if he could only sit four to five hours and walk

one and a half hours, lift less than ten pounds, and do no bending, had leg numbness, and could not climb stairs. Similarly, Seymour stated that if claimant was required to be absent twenty days a year he could not hold down a job, and that three to four distractions a week of forty-five minutes or more would cut down on about half of the possible jobs.

The ALJ determined that claimant was unable to perform his past relevant work, but could perform sedentary work, defined as work requiring lifting no more than ten pounds at a time and requiring primarily sitting with only occasional standing and walking. Based upon this finding, the ALJ determined that claimant was not disabled.

## II. DISCUSSION

Our role in reviewing claims brought under the Social Security Act is limited. As we stated recently *Bloodsworth v. Heckler*, 703 F.2d 1233 (11th Cir.1983):

We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the Secretary. Even if we find that the evidence preponderates against the Secretary's decision, we must affirm if the decision is supported by substantial evidence. 42 U.S.C. § 405(g). Yet, within this narrowly circumscribed role, we do not "act as automatons." *Ware v. Schweiker*, 651 F.2d 408, 411 (5th Cir.1981), *cert. denied*, 455 U.S. 912, 102 S.Ct. 1263, 71 L.Ed.2d 452 (1982).[3] We must scrutinize the record as a whole, *id.*, to determine if the decision reached is reasonable, and supported by substantial evidence.

Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.

*Id.* at 1239 (citations omitted). "[T]his court, like the ALJ, must consider the evi-

dence as a whole, *Simmons v. Harris*, 602 F.2d 1233, 1236 (5th Cir.1979), including: '(1) objective medical facts or clinical findings; (2) diagnoses of examining physicians; (3) subjective evidence of pain and disability as testified to by the claimant and corroborated by [others, including family members], and (4) the claimant's age, education, and work history.'" *Walden v. Schweiker*, 672 F.2d 835, 839 (11th Cir. 1982) (quoting *DePaepe v. Richardson*, 464 F.2d 92, 94 (5th Cir.1972)).

The Act places a very heavy initial burden on the claimant to establish the existence of a disability by proving that he or she is no longer capable of performing his or her past work. *Bloodsworth*, 703 F.2d at 1240. This burden has been characterized as bordering on the unrealistic, but it is not insuperable. *Id.* In the present case, the ALJ found that the claimant met this burden, that is, claimant established that he was no longer capable of performing the heavy work of an inspector of valve fittings. The burden then shifted to the Secretary to show the existence of other gainful employment available in the national economy that claimant was capable of performing. *See, e.g., Bloodsworth*, 703 F.2d at 1242–43; *Walden*, 672 F.2d at 840; *Johnson v. Harris*, 612 F.2d 993, 997 (5th Cir.1980). We find that the Secretary did not meet this burden.

 The ALJ rejected the opinion of claimant's treating physician that claimant was disabled. Although the ALJ was entitled to determine that Dr. McLaughlin's assessment of disability did not meet the criteria for disability under the Act, we note that "substantial" or "considerable" weight must be given to the opinion of a treating physician. *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir.1982); *Smith v. Schweiker*, 646 F.2d 1075, 1081 (5th Cir. Unit A 1981); *Fruge v. Harris*, 631 F.2d 1244, 1246 (5th Cir.1980). "Generally a

3. The Eleventh Circuit, in the en banc decision *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

treating doctor's opinion is entitled to more weight than that of a consulting doctor's." *Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir.1984). Dr. Carter, who opined that claimant could lift a great deal and work for long periods, never even examined claimant; rather, he merely checked boxes on a form without explaining how he reached his conclusions. "We accord little weight to the opinion of a reviewing physician if it is contrary to the opinion of the only physician to examine the patient." *Warncke v. Harris*, 619 F.2d 412, 416 (5th Cir.1980). Thus, reports of physicians who do not examine the claimant, taken alone, do not constitute substantial evidence on which to base an administrative decision. *Strickland v. Harris*, 615 F.2d 1103, 1109 (5th Cir.1980); *Johnson v. Harris*, 612 F.2d at 998. We agree with the Eighth Circuit that " '[t]o attempt to evaluate disability without personal examination of the individual and without evaluation of the disability as it relates to the particular person is medical sophistry at its best.' " *Nelson v. Heckler*, 712 F.2d 346, 348 (8th Cir.1983) (quoting *Landess v. Weinberger*, 490 F.2d 1187, 1190 (8th Cir.1974)). Moreover, in the present case, the ALJ rejected Dr. Carter's conclusions about what work the claimant was capable of performing and, rather, determined that claimant could only perform sedentary work. No explanation is given as to how the ALJ arrived at this conclusion.[4]

■ We conclude that the record is devoid of substantial evidence that claimant could perform even sedentary work.[5] Accordingly, we REVERSE and REMAND to the district court with directions to order that Ruby Spencer be awarded benefits for the period of Rufus Spencer's disability.

4. Although the ALJ refers to the requirement of reviewing "the medical evidence in the record," she does not explain what in the record supports her conclusion. We note that the testimony of Seymour, the vocational expert, cannot constitute substantial evidence since he merely elaborated upon what jobs claimant could do if he had certain abilities; he did not independently evaluate claimant's capabilities.

5. Appellant also claims that Rufus Spencer was not employable because of his frequent absences from work. Because of our disposition of the issues considered above, we do not reach this question.