**Vera D. SEWELL, Plaintiff-Appellant,**

**v.**

**Otis R. BOWEN, Secretary of Health and Human Services, Defendant-Appellee.**

**No. 85–8546.**

United States Court of Appeals, Eleventh Circuit.

June 30, 1986.

L. Valdi Cooper, Edward B. Stalnaker, Augusta, Ga., for plaintiff-appellant.

Henry L. Whisenhunt, Jr., Asst. U.S. Atty., Augusta, Ga., for defendant-appellee.

Before GODBOLD, Chief Judge, VANCE, Circuit Judge, and THOMAS *, Senior District Judge.

GODBOLD, Chief Judge:

Sewell appeals from the district court's judgment affirming the determination of the Secretary that she is not entitled to social security disability benefits because she is able to do her past relevant work. Because the Secretary failed to consider claimant's subjective testimony of pain as required by the applicable law, we reverse.

Sewell is a 60 year-old woman who lost her left arm at the age of four. She attended public school through the ninth grade and later obtained a G.E.D. certificate. Her only employer has been Homestead Draperies. During her 15 years at

---

* Honorable Daniel H. Thomas, Senior U.S. District Judge from the Southern District of Alabama, sitting by designation.

Homestead she held a number of jobs. During her first two years she was a drapery inspector. As part of this job she had to lift and carry bundles of draperies that weighed 15 to 20 pounds. For the next ten years she carried drapes to the repair operators. These bundles also weighed between 15 to 20 pounds. For the last three years she insured that packing labels were on the boxes of draperies to be sent out. She would take a box, which weighed between 20 to 25 pounds, from the printing room and would carry it about 25 yards to a conveyer belt. R.II–80. She lost her job when Homestead closed in 1981. She testified that although she would have attempted to continue working if the plant had stayed open, she did not know how long she would have been able to continue because of the extreme pain she was experiencing in her remaining arm. R.II–26.

The following medical evidence was introduced at Sewell's disability hearing. In 1980 she underwent surgery for right carpal tunnel syndrome. There was no evidence of complications arising from this surgery. An examination report by Dr. Caldwell noted that Sewell's activities were limited by the absence of her left arm, and that she had an esophageal hiatus hernia, and atropic gastritis. Three letters by Dr. Reynolds, Sewell's physician, were also introduced. In these letters he noted,

Patient complains of pain with ranges of motion of the right shoulder.... Working diagnosis is musculoskeletal pain. Origin of pain is thought related to the patient's over use of shoulder girdle musculature due to the left sided upper extremity amputation of the past.... It would be my opinion that the patient can continue to use the arm, although it is obvious that she may experience some discomfort.

The orthopaedic examination of Dr. Becton stated:

Examination of the right shoulder reveals she has a near full range of motion of the shoulder, but complains of soreness at extremes of motion. She is lightly tender over the long head of the biceps tendon. She has full range of motion of her elbow and wrist on the right upper extremity.... In summary, she now has some soreness secondary to bursitis in the right shoulder. Orthopaedic exam is otherwise negative.

R.II–131. A residual functional capacity assessment conducted by Dr. Riccardi indicated that Sewell's maximum lifting capacity was 20 pounds but that she could lift only 10 pounds on a frequent basis. R.II–103.

The results of a psychiatric examination conducted by Dr. O'Leary were also entered into evidence. They showed that Sewell's English and math skills ranged from the sixth to eighth grade levels. Her verbal I.Q. was 89, which is the low average range of intelligence. Because she only has one arm, it was impossible for Dr. O'Leary to administer the performance subtest. O'Leary concluded that Sewell suffers from "tension, feelings of inadequacy, caution and inhibition, strong dependency needs, fearfulness in expressing emotions and withdrawal tendencies.... Mrs. Sewell's major functional limitations will hinder her ability to obtain and keep a job."[1]

Several witnesses testified before the ALJ. Sewell testified that her "elbow ... hurts all the time," R.II–6, that she had difficulty gripping objects, R.II–6, and that although she was taking medication, it did not relieve her pain. R.II–28. Since Homestead closed she has applied to 46 places for jobs without any success. Her

1. The impressions on which O'Leary based his conclusions were:
   1. She becomes worried, anxious and depressed when faced with unfamiliar tasks.
   2. Anxiety interferes with her ability to stick with a job when frustrated or under stress.
   3. She may lose confidence and walk off the job.

4. She may be unable to cope with several anxiety producing stimuli at one time such as new tasks, new co-workers, new boss, new routine.
5. Anxiety has made it difficult for her to concentrate and it makes it difficult for her to understand and follow directions.

neighbor testified that she is "just in constant pain with that arm ... and she's not resting and sleeping at night ... she's not resting with this hurting in her shoulder from this arm." R.II–39. Her sister testified that in the past two years the pain in Sewell's remaining arm has increased. R.II–41.

The final witness was a vocational expert, Dr. Hartledge. The ALJ asked him a series of questions. The first was:

Assume first of all the Claimant could do no heavy lifting with her right hand, she has limited range of motion in her right shoulder, she could do no extensive reaching or pushing or pulling with her right hand. We have a psychological report which indicates that she has generalized anxiety disorder. The psychologist indicates she has 6th to 8th grade level. He couldn't get a full-scale I.Q. but a verbal I.Q. of 89. Some indication from his remarks she could probably not do a high specialty job. There's also evidence of surgery for a carpal tunnel syndrome which may possibly inhibit fine manipulation. Considering these as a hypothesis, could the Claimant do her past relevant work?

R.II–43. Hartledge answered that she could not. He also testified that under these circumstances she would be unable to perform any other job that exists in significant numbers in the national economy.

The ALJ's second question directed Dr. Hartledge's attention to the evidence contained in the medical and psychological reports that had been introduced. He opined that nothing in those records indicated that Sewell was precluded from performing her past relevant work or that she was unable to perform other jobs that existed in the national economy in significant numbers. R.II 45–46. Finally, the ALJ asked Dr. Hartledge to consider the testimony of Sewell and her witnesses. He responded that after hearing this testimony he did not think that Sewell could perform her past relevant work and that there were no jobs in significant numbers in the national economy that she could perform.

The ALJ then made the analysis delineated in 20 C.F.R. § 404.1520. He first found that Sewell was not working. He next determined that Sewell suffered from a "severe impairment," but that this impairment does not meet or equal an impairment listed in Appendix 1. He concluded that she was able to perform her past relevant work as a drapery inspector and therefore was not disabled. He made no findings as to whether she could perform any other of the jobs she had at Homestead or whether there existed jobs in the national economy that she could perform.

■ Our role in reviewing disability determinations by the Secretary is a limited one. We do not reweigh the evidence or substitute our judgment for that of the Secretary. Even if the evidence preponderates against the Secretary, we must affirm if the decision is supported by substantial evidence. *See Parker v. Bowen*, 788 F.2d 1512, 1521–22 (11th Cir.1986) (en banc); *Wheeler v. Heckler*, 784 F.2d 1073, 1074 (11th Cir.1986); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir.1983). In conducting this limited review we determine whether there exists relevant evidence that a reasonable person would accept as adequate to support the Secretary's decision. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); *Walden v. Schweiker*, 672 F.2d 835, 838–40 (11th Cir.1982).

The ALJ denied Sewell's claim because he found that she could perform her past relevant work. Under the Act Sewell bore the burden of proving that she could no longer perform her past work. *Spencer v. Heckler*, 765 F.2d 1090, 1093 (11th Cir. 1985); *Bloodsworth*, 703 F.2d at 1240. Although this burden is high, it is not insuperable. *Spencer*, 765 F.2d at 1093; *Bloodsworth*, 703 F.2d at 1240. Sewell presented medical evidence of her physical condition and subjective testimony of pain in an attempt to meet this burden. The ALJ made no findings as to the credibility of the witnesses testifying as to Sewell's subjective evidence of pain because he found that the medical evidence did not

support the level of pain asserted. This failure to consider the subjective testimony was error.

Since the ALJ's decision in this case, Congress has enacted a new law detailing when subjective evidence of pain must be taken into consideration in making a disability determination. Social Security Disability Benefits Reform Act of 1984, Pub.L. No. 98–460, 98 Stat. 1794 (October 9, 1984). This law applies to this case. *See Landry v. Heckler,* 782 F.2d 1551, 1553 (11th Cir. 1986) (new law applies to all cases pending before Secretary or the courts at the time of its enactment). We explored the contours of this new provision in *Hand v. Heckler,* 761 F.2d 1545 (11th Cir.1985), vacated on other grounds and remanded sub nom. *Parker v. Bowen,* 788 F.2d 1512 (11th Cir.1986) (en banc). In order to award benefits based on subjective complaints of pain

> [t]here must be evidence of an underlying medical condition and (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from that condition or (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain.

*Id.* at 1548 (*quoting* S.Rep. No. 466, 98th Cong., 2d Sess. 24 (1984)). Sewell presented evidence of an underlying medical condition. Dr. Reynolds diagnosed that Sewell suffers from "musculoskeletal pain" and Dr. Becton indicated that she suffers from bursitis. These reports provide substantial evidence for the ALJ's finding that Sewell "currently suffers with some degree of bursitis in her right arm...." R.II 10. Thus, the first part of the *Hand* test is met.

The ALJ refused to consider the subjective complaints of pain because "the medical evidence does not corroborate her

allegations that pain is so severe as to significantly or severely limit normal bodily functions or movements...." R.II 10. In other words, the ALJ found that Sewell did not meet the first alternative in the second prong of the *Hand* test. We do not decide whether this finding is supported by substantial evidence because it is clear that Sewell satisfied the second alternative. In *Hand* we noted:

> The new statutory standard for evaluation of pain does not provide a license to the Secretary to deny disability claims where medical evidence in the record clearly indicates the existence of a medical impairment which could reasonably be expected to produce disabling pain. In this situation, the fact finder must evaluate the credibility of claimant's testimony as to pain, and must express a reasonable basis for rejecting such testimony.

761 F.2d at 1549 n. 6. The medical evidence here reveals the existence of bursitis. Bursitis is an impairment that could reasonably be expected to cause disabling pain. This syndrome may be acute, subacute, or chronic. Primer on the Rheumatic Diseases § 72 (G. Rodnan & Schumacher eds. 1983). X-rays may not distinguish acute bursitis from the other forms. *Id.* In the acute syndrome the "pain is severe and accentuated by almost any motion of the shoulder...." *Id.* Such pain is disabling. A patient suffering from either the subacute or chronic form of bursitis experiences similar pain but to a lesser degree. Even this lesser degree of pain can reasonably be expected to be disabling when it occurs in the only arm a claimant has.[2] Because bursitis could reasonably be expected to cause Sewell disabling pain, the Secretary was bound to consider Sewell's subjective testimony of pain. He did not.

REVERSED and REMANDED.[3]

---

**2.** It is appropriate to consider that Sewell has only one arm in determining whether bursitis could reasonably be expected to produce disabling pain. Because of her condition, she is already significantly impaired in performing her daily functions.

**3.** Sewell argues that it is inconsistent for the Secretary to conclude that she suffers from a severe impairment yet is able to perform her past relevant work. This argument lacks merit. Under the Secretary's regulations a finding of a severe impairment is a prerequisite to a finding of disability. Once the Secretary determines

that the claimant suffers from a severe impairment, the inquiry focuses on the level of severity. If the severity equals or exceeds that of an impairment listed in Appendix 1, the claimant is disabled. If not, the claimant will be considered disabled only if the impairment is severe enough to preclude her from performing her past relevant work and if it precludes her from performing any other work. *See* 20 C.F.R. § 404.1521.