Donald E. MASON, Plaintiff,

v.

John J. CALLAHAN, Ph.D.[1] Acting
Commissioner of Social
Security, Defendant.

No. 1:96CV00105 LOD.

United States District Court,
E.D. Missouri,
Southeastern Division.

Sept. 30, 1997.

can perform any job...." *Roe v. Chater,* 92 F.3d
at 677.

1. President Clinton appointed John J. Callahan,
Ph.D., to serve as Acting Commissioner of Social
Security, effective March 1, 1997, to succeed
Shirley S. Chater. In accordance with Rule
25(d)(1) of the Federal Rules of Civil Procedure,
John J. Callahan, Ph.D., should be substituted for
Shirley S. Chater as the defendant in this suit.
No further action need be taken to continue this
suit by reason of the last sentence of section
205(g) of the Social Security Act, 42 U.S.C.
405(g).

Donald R. Rhodes, Bloomfield, MO, for Plaintiff.

Wesley D. Wedemeyer, Office of U.S. Atty., St. Louis, MO, for Defendant.

## ORDER AND MEMORANDUM OF UNITED STATES MAGISTRATE JUDGE

DAVIS, United States Magistrate Judge.

This matter is before the Court on the cross-motions of the parties for summary judgment pursuant to Rule 56, Fed.R.Civ.P. This cause is before the undersigned Magistrate Judge by consent of the parties pursuant to 28 U.S.C. § 636(c).

Plaintiff filed applications for disability benefits under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq.,* and for supplemental security income (SSI) under Title XVI of the Act, 42 U.S.C. § 1381, *et seq.* (107–109, 135–137) Plaintiff alleged that he was disabled due to high blood pressure, an ulcer, blocked arteries, and back problems. (Tr. 107–108, 135–136, 153)

Plaintiff's applications were denied initially and on reconsideration. (Tr. 98–106, 112–115, 128–133) On February 7, 1994, there was a hearing before an Administrative Law Judge (ALJ) on plaintiff's applications. (Tr. 22–44) On March 27, 1995, the ALJ rendered a decision in which he found that plaintiff was not under a disability as defined in the Act at any time through the date of the decision. (Tr. 9–16) Subsequently, the Appeals Council of the Social Security Administration denied plaintiff's request for review. (Tr. 3–4) The decision of the ALJ is therefore the Secretary's final decision and is reviewable in this proceeding. 42 U.S.C. § 405(g).

### MEDICAL EVIDENCE [2]

On March 16, 1993, plaintiff was seen at the St. Francis Medical Center complaining of chest discomfort that had been occurring

---

**2.** The Court notes that defendant merely adopted the facts set forth in the ALJ's opinion and plaintiff only recites one page of facts in his motion for summary judgment. Such "brevity" is not conducive to a proper resolution of this case.

for the last year, but had increased over the last few weeks. (Tr. 165) It was an aching sensation that produced a tingling in his jaw and radiated into his left arm. (Tr. 166) Although he sometimes experienced distress while at rest, it mostly occurred when active. (Tr. 166) He had been given nitroglycerin, which helped. (Tr. 166–67) Plaintiff reported that he had never been told that he had a heart murmur, a valvular problem, or heart disease. (Tr. 166) He did report that he suffered from diabetes and smoked. (Tr. 166)

No evidence of myocardial damage was found and a chest X ray was normal, as was an electrocardiogram. (Tr. 165, 171) A thallium stress test showed excellent exercise capacity and was negative for exercise-induced myocardial ischemic change. (Tr. 168, 197) He was diagnosed as suffering from peptic ulcer disease, hypertension, and a chest distress of unclear etiology. (Tr. 165)

Dr. DeFelice reported on March 31, 1993 that plaintiff lifts 40–70 lbs. at work, which resulted in chest pain. (Tr. 220) An angiogram showed some obstruction in plaintiff's right coronary artery. (Tr. 220) Plaintiff was told to decrease the amount he lifted at work to 20–30 lbs. (Tr. 220) In April of 1994, plaintiff reported chest distress when active. (Tr. 220) He was assessed as having obstruction in a nondominant right coronary artery, which caused his chest distress. (Tr. 220)

On May 5, 1993, plaintiff reported that he was continuing to have chest pain, although he was active without undue limitation. (Tr. 219) He was still able to work, but if he had distress at work and continued to work his distress worsened. (Tr. 219) Dr. DeFelice's assessment remained unchanged. (Tr. 219)

On October 4, 1993, Dr. Alan Chen saw plaintiff, who complained of congestion. (Tr. 215) On January 4, 1994 plaintiff complained of low back pain. (Tr. 215) A CT scan of plaintiff's lumbar spine showed bulging of the posterior aspect of the disc, especially at L–3 and L–4, L–4 and L–5, L–5, and S–1. (Tr. 216) There was no definite herniated disc disease and no evidence of lumbar spinal canal stenosis. (Tr. 216)

On January 13, 1994 plaintiff complained of low back pain, which worsened when walking. (Tr. 214) Dr. Chen saw plaintiff several times over the next few weeks. (Tr. 214) Dr. Chen reported that physical therapy was not helping. (Tr. 214)

Dr. David Lee, a neurologist, saw plaintiff on January 19, 1994, on a referral from Dr. Chen. (Tr. 203) Plaintiff stated that he hurt his back on December 31, 1993 when he slipped while moving a water heater. (Tr. 203) Plaintiff complained of constant pain in the lower back and right posterior thigh. (Tr. 203) The pain may be aggravated by riding in a car, excessive walking, bending, stooping, and lifting heavy objects. (Tr. 203) Relief was obtained by lying flat on his back. (Tr. 203)

Plaintiff had mild to moderate pain and spasm in the lumbar region. (Tr. 203) Forward flexion was limited to 60 degrees, while lateral flexion was normal. (Tr. 203) Dr. Lee concluded that the low back and leg pain suggested that his pain was primarily of musculoskeletal origin. (Tr. 203) Plaintiff was put on strict bed rest for 7–10 days. (Tr. 204)

On February 17, 1994, plaintiff was seen by Dr. Richard Moore at a pain clinic. (Tr. 211) Plaintiff was treated with an epidural steroid injection and also a right SI joint injection. (Tr. 209–11) On February 23, 1994, plaintiff returned to Dr. Moore and said there was no improvement in his pain. (Tr. 208) On February 28, 1994, plaintiff was given another epidural steroid injection and right SI joint injection. (Tr. 206, 207)

On March 15, 1994, an MRI of plaintiff's lumbar spine was performed. (Tr. 202) The results showed degenerative disc disease at L3–4, L4–5, and L5–S1. (Tr. 202) Findings were most severe at L4–5 where there was equivocal mild right paramedian and moderate central discongenic bulge. (Tr. 202)

On March 25, 1994, Dr. Lee wrote a letter to Disability Determinations concerning plaintiff. (Tr. 201) Dr. Lee first noted plaintiff's history and the rather poor treatment results. (Tr. 201) Furthermore, because of plaintiff's condition he has difficulty with prolonged walking, bending, stooping, and lifting heavy objects. (Tr. 201) Dr. Lee concluded that plaintiff could not return to his past job as a laborer at that time. (Tr. 201)

From May 17, 1994 thru February 3, 1995 plaintiff was seen by Dr. John Hunt, still complaining of lower back pain. (Tr. 241) Plaintiff was also seen by Dr. Yong Kie Kim, a neurosurgeon, who wrote in a letter dated June 16, 1994, that plaintiff was experiencing some radicular pain on the right side. (Tr. 246) However, plaintiff's MRI and neurological exam, which were entirely normal, did not support a diagnosis of a herniated disc. (Tr. 246)

On August 4, 1994, Dr. Kim wrote that plaintiff complained of the same pain, but that his neurological exam was again normal. (Tr. 245) Dr. Kim diagnosed plaintiff as suffering from musculoskeletal pain and recommended conservative treatment. (Tr. 245)

Dr. Stanley M. Patterson, a neurosurgeon, wrote in a letter to Dr. Hunt dated August 17, 1994 that plaintiff's back pain was increased by sitting, walking, and riding and was diminished by lying down and heat. (Tr. 244) Dr. Patterson's exam of plaintiff showed that his pain was made worse by extension and rotation over the right lumbosacral facet joint. (Tr. 244) He felt that plaintiff had a facet joint syndrome and did not have a problem that could be treated by disc surgery. (Tr. 244)

Dr. John Parks saw plaintiff at his pain clinic on November 5, 1994. (Tr 242) He recommended a lumbar epidural steroid injection, which plaintiff agreed to do. (Tr. 242) He also found that plaintiff had symptoms consistent with a right lumbar facet joint syndrome. (Tr. 242)

On December 1, 1994, plaintiff was seen by Dr. S.K. Choudhary, a neurologist, and complained of persistent headaches and numbness on the left side of his face. (Tr. 228) Plaintiff had a one-month history of persistent, tension type headaches. (Tr. 229) Spinal percussion revealed tenderness in the lumbar region. (Tr. 228) On December 12, 1994, a CT scan was performed on plaintiff's head. (Tr. 231) The scan revealed a partially calcified pineal gland at the upper limits of normal size without indication of abnormal enhancement of invasion. (Tr. 231) There was no additional mass. (Tr. 231) On January 23, 1995, plaintiff told Dr. Choudhary that his back pain was worse and he was still having headaches. (Tr. 226)

Dr. Choudhary next saw plaintiff on February 17, 1995. (Tr. 224–25) Plaintiff's headache medication was increased, and he was told to continue his back muscle strengthening exercises. (Tr. 224) That same day an X ray of plaintiff's cervical spine showed that the segments were in satisfactory alignment and that there was minimal narrowing of the fifth disc space. (Tr. 230)

On June 22, 1995, plaintiff was admitted to Southeast Missouri Hospital with intermittent chest pain, which was suspected to be non-cardiac. (Tr. 249) An angiography revealed "twenty in twenty percent left anterior descending coronary artery (LAD) dominant circumflex and minimal irregularity." (Tr. 251) Plaintiff was diagnosed as having early left anterior descending coronary artery (LAD) and dominant circumflex with subtotal and total nondominant right coronary stenosis with bridging collaterals with intact left ventricle. (Tr. 268)

### HEARING TESTIMONY

At his hearing before the ALJ, plaintiff testified that he was 38 years old. (Tr. 25) He finished the ninth grade of school. (Tr. 25) He last worked in January of 1994 at Hudson Foods, after working there for a little over a year as a scale operator. (Tr. 26, 28) Before that he worked for Specialty Engineering, making dyes for a little over two years. (Tr. 26, 27) Plaintiff also worked for Paramount Camp as a stockman for a year and has done a little farm work. (Tr. 27)

Plaintiff quit his job at Hudson Foods because of his back, which he had injured while carrying a water heater. (Tr. 28) It got worse when he lifted heavy boxes at work. (Tr. 28) An MRI was done on plaintiff's back which revealed a flattened disc, but he was told that there was no way to repair the damage. (Tr. 29)

Plaintiff just sits around and watches television all day. (Tr. 31) He sometimes goes to the store, and he visits a friend about once a week. (Tr. 31) When he walks about an hour his back and right leg hurts. (Tr. 32) He then has to sit down and rest an hour. (Tr. 33) He can lift a gallon of milk and light grocery bags. (Tr. 33) His back will hurt after he drives about 30 to 45 minutes. (Tr.

33) He also has problems after sitting 30–45 minutes, with his back getting stiff, and he shifts between sitting and standing. (Tr. 34)

Plaintiff does not do any cooking or chores around the house, although he sometimes washes a few dishes. (Tr. 35) He does not go to church, the coffee shop, or a tavern to socialize. (Tr. 37) Plaintiff's medications make him tired. (Tr. 39) Plaintiff's pain comes and goes every day, and if he is physically active, his pain is aggravated. (Tr. 39) Plaintiff's back hurts when he walks one block. (Tr. 40)

### ALJ FINDINGS

The ALJ found that plaintiff met the disability insured status requirements of the Act on January 4, 1994, the date plaintiff stated he became unable to work, and continues to meet them through September 30, 1998. (Tr. 14) The ALJ found that plaintiff has not engaged in substantial gainful activity since January 1994. (Tr. 14) The ALJ further found that the medical evidence established that plaintiff has high blood pressure, coronary artery disease, lumbar musculoskeletal injuries, and headaches which are responding to treatment, but that he does not have an impairment or combination of impairments listed in, or equal to one listed in Appendix 1, Subpart P, Regulation No. 4. (Tr. 15)

Additionally, the ALJ found that plaintiff's allegation of disability from all work was not convincing. (Tr. 15) The ALJ also found that plaintiff has the residual functional capacity to perform the physical exertion requirements of work, except for lifting more than 20 pounds and prolonged walking, bending, stooping, and squatting. (Tr. 15)

The ALJ further found that plaintiff is unable to perform his past relevant work as a laborer, but that he has the residual functional capacity to perform the full range of light work. (Tr. 15) The ALJ concluded that plaintiff was not under a disability as defined by the Act at any time through the date of the decision. (Tr. 15)

### DISCUSSION

Plaintiff argues that 1) the ALJ applied an improper standard in assessing plaintiff's pain; 2) the ALJ failed to give appropriate weight to plaintiff's subjective complaints; 3) the ALJ failed to properly assess plaintiff's combination of impairments; and 4) the ALJ did not meet his burden of showing that there were jobs plaintiff could do, once it was shown that plaintiff could not do his past work.

The Court finds no error in the ALJ's decision based on a review of the entire record as a whole, nor in the ALJ's determination that plaintiff is not disabled. Therefore, the ALJ's decision is affirmed.

The Secretary's decision as to the plaintiff's disability status is conclusive upon this Court if it is supported by "substantial evidence," i.e., relevant evidence a reasonable person might accept as adequate to support the decision. *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); 42 U.S.C. § 405(g). To determine whether the Secretary's final decision is supported by substantial evidence, the Court is required to review and consider the record as a whole. *Stewart v. Secretary of HHS,* 957 F.2d 581, 585 (8th Cir.1992).

Plaintiff first argues that the ALJ applied an improper standard in assessing plaintiff's pain. Plaintiff argues that the ALJ noted that plaintiff had a combination of impairments, but he put little emphasis on the residual pain suffered. Plaintiff claims that the Act requires medical evidence of a condition that could cause pain, but does not require objective evidence of the pain. Thus, plaintiff claims that the ALJ committed error in requiring objective evidence of pain.

Plaintiff's arguments are refuted by the record and the well-reasoned opinion of the ALJ. In his opinion, the ALJ detailed the medical evidence which formed the basis for plaintiff's pain. (Tr. 12, 13) The ALJ also noted that plaintiff has a severe combination of impairments. (Tr. 13) The ALJ further stated that plaintiff's back pain precluded him from heavy lifting, prolonged walking, stooping or squatting, and his chest pain precludes heavy work. (Tr. 13)

Thus, the ALJ credited in part plaintiff's complaints of pain that his impairments caused and found that this pain precluded several activities. The ALJ, however, did not explicitly or implicitly require objective

evidence of plaintiff's pain. Furthermore, to state the obvious, pain is a subjective phenomenon which cannot be objectively measured. The fact that the ALJ did not conclude that plaintiff's pain rendered him disabled does not constitute an application of an improper standard or a failure to properly emphasize his residual pain. The Court finds nothing improper in the manner in which the ALJ assessed plaintiff's complaints of pain.

In an argument related to plaintiff's first claim, he next argues that the ALJ failed to give appropriate weight to plaintiff's subjective complaints. Plaintiff claims that rather than requiring objective evidence of pain, the ALJ is required to give greater weight to plaintiff's testimony concerning his pain.

The ALJ applied *Polaski v. Heckler,* 751 F.2d 943, 948 (8th Cir.1984) in analyzing plaintiff's complaints of pain. (Tr. 14) The ALJ first noted that plaintiff's physicians told him to avoid heavy work, which does not preclude light work. (Tr. 14) The ALJ then pointed out that plaintiff drives, visits, and does household maintenance such as cooking, shopping, other similar activities. (Tr. 14) The ALJ also stated that because plaintiff has a medical card and lives with a girlfriend who supports him, plaintiff was not motivated to work. (Tr. 14)

Furthermore, the ALJ found that plaintiff has not always followed medical directions, such as returning to Dr. DeFelice, Dr. Chen, or a pain clinic. (Tr. 14) Finally, the ALJ found that plaintiff's high blood pressure and headaches had been improved by medications without significant side effects. (Tr. 14)

■ Credibility determinations are in the first instance for the ALJ and not the courts. *Tucker v. Heckler,* 776 F.2d 793, 796 (8th Cir.1985). The ALJ may reject a claimant's testimony on the basis of credibility due to inconsistencies in the record as a whole. *Battles v. Sullivan,* 902 F.2d 657, 660 (8th Cir.1990). He must, however, make express credibility determinations and set forth inconsistencies in the record that lead him to reject plaintiff's complaints of pain, and those credibility determinations must be supported by substantial evidence. *Jernigan v. Sullivan,* 948 F.2d 1070, 1073 (8th Cir.1991).

■ In assessing a claimant's subjective allegations, the ALJ must consider:

1. the objective evidence;
2. the subjective evidence of the duration, frequency and intensity of plaintiff's pain;
3. any precipitating or aggravating factors;
4. the claimant's daily activities;
5. the dosage, effectiveness and side effects of any medication; and
6. the claimant's functional restrictions.

*Baker v. Secretary of HHS,* 955 F.2d 552, 555 (8th Cir.1992).

As stated above, the ALJ did not require objective evidence of plaintiff's pain. Moreover, there is no requirement that the ALJ defer to plaintiff's testimony concerning his pain. Rather, the ALJ is required to analyze subjective complaints by applying the *Polaski* factors and reviewing the entire record as a whole.

In the case at bar, the ALJ examined the objective evidence; the subjective evidence of the duration, frequency and intensity of plaintiff's pain; any precipitating or aggravating factors; plaintiff's daily activities; the dosage, effectiveness, and side effects of medication; and plaintiff's functional restrictions, as required. This evidence was inconsistent with plaintiff's testimony, and it was the duty of the ALJ to reconcile this inconsistency and not simply defer to plaintiff's testimony. *See Clarke v. Bowen,* 843 F.2d 271, 272 (8th Cir.1988) (there is no requirement in the Social Security regulations nor the applicable caselaw that the ALJ view the evidence in the light most favorable to plaintiff).

■ Additionally, a review of the record shows that there is substantial evidence to support the ALJ's findings, and plaintiff does not argue to the contrary. The Court declines to second-guess the ALJ's determination and finds that the ALJ could disbelieve the subjective complaints due to the inconsistencies in the evidence. *McClees v. Shalala,* 2 F.3d 301, 303 (8th Cir.1993). Thus, there exists no basis for this Court to set aside the ALJ's decision.

■ Plaintiff next argues that the ALJ failed to properly assess plaintiff's combination of impairments. Plaintiff claims that the ALJ failed to determine the total impact which his combination of impairments have upon his ability to engage in gainful activity.

A review of the record shows that the ALJ assessed and considered the objective evidence and listed his reasons for rejecting plaintiff's subjective complaints. After detailing the medical evidence, the ALJ found that plaintiff "has a severe **combination** of impairments." (Tr. 14) (emphasis added) The ALJ then concluded that plaintiff does not have an impairment or "**combination** of impairments" which render him disabled under the applicable regulations and that precluded him from performing light work. (Tr. 14–15) (emphasis added)

Other than the bald statement that the ALJ failed to consider the combined effect of plaintiff's mental and physical impairments, plaintiff points to no specific deficiency in the ALJ's decision. Moreover, the ALJ's decision considered each of plaintiff's impairments in detail before he expressly concluded that plaintiff does not have an impairment or combination of impairments that rendered him disabled. "To require a more elaborate articulation of the ALJ's thought processes would not be reasonable." *Browning v. Sullivan*, 958 F.2d 817, 821 (8th Cir.1992), *quoting, Gooch v. Sec. of H.H.S.*, 833 F.2d 589, 592 (6th Cir.1987), *cert. denied*, 484 U.S. 1075, 108 S.Ct. 1050, 98 L.Ed.2d 1012 (1988).

Lastly, plaintiff claims that the ALJ did not meet his burden of showing that there were jobs plaintiff could do once it was shown that plaintiff could not do his past work. Plaintiff argues that the ALJ's general reference to light work does not meet the substantial evidence test. Furthermore, plaintiff claims the ALJ failed to specifically state what other jobs plaintiff could perform without aggravation to plaintiff's impairments. In support of his argument, plaintiff cites to *Hodgson v. Celebrezze*, 312 F.2d 260 (3rd Cir.1963), *Spencer v. Heckler*, 765 F.2d 1090, (11th Cir.1985), and *Clemochefsky v. Celebrezze*, 222 F.Supp. 73 (M.D.Pa.1963).

■ Plaintiff has the initial burden of proving that a medically determinable impairment prevents him from performing him past relevant work. *Pickner v. Sullivan*, 985 F.2d 401, 403 (8th Cir.1993). Once a claimant meets that burden, the burden shifts to the Commissioner to establish that the claimant has the residual functional capacity to perform other substantial gainful activity in the national economy. *Lewis v. Heckler*, 808 F.2d 1293, 1297 (8th Cir.1987). The Commissioner may meet that burden by using the medical-vocational guidelines (the "grid"). *Id.*

■ Furthermore, the Commissioner must examine the claimant's residual functional capacity (RFC), age, education, and relevant work experience, and apply these findings to the grid of 20 C.F.R. Part 404, Subpart P, Appendix 2. *McCoy v. Schweiker*, 683 F.2d 1138, 1142, 1146–47 (8th Cir.1982) (en banc). If the ALJ properly applies the grid and establishes that the grid categorizes the claimant as nondisabled, then the Commissioner has met his burden of proving that jobs exist in the national economy for people such as the claimant. *McCoy, supra* at 1147–1149.

The ALJ found that plaintiff met his initial burden of proving that a medically determinable impairment prevents him from performing his past relevant work. (Tr. 13) The ALJ then stated that the burden then shifted to the Commissioner to establish that plaintiff has the residual functional capacity to perform other substantial gainful activity in the national economy. (Tr. 13) The Commissioner then met that burden by applying plaintiff's residual functional capacity, age, education, and relevant work experience to the medical-vocational guidelines and concluded that plaintiff could perform the full range of light work. (Tr. 15)

■ Plaintiff does not contest the ALJ's analysis of plaintiff's residual functional capacity, age, education, and relevant work experience or how the ALJ applied the guidelines. Furthermore, there is no requirement that the ALJ show the existence of specific jobs that plaintiff could perform. Moreover, all of the ALJ's findings are supported by substantial evidence in the record as a whole. Thus, the ALJ met his burden of proving the existence of jobs which plaintiff could perform.

Finally, the cases relied on by plaintiff are of no help. Both *Hodgson* and *Clemochefsky* are pre-guideline cases and, thus, are inapplicable to this case. In *Spencer,* the court found that the record was devoid of any evidence that the claimant could perform sedentary work and that the ALJ did not explain how he arrived at his conclusion that plaintiff could perform sedentary work. Furthermore, in *Spencer,* a vocational expert, rather than the guidelines, was used. Thus, *Spencer* is also inapplicable to the case at bar.

Accordingly,

**IT IS HEREBY ORDERED** that defendant's motion for summary judgment is **granted.**

**IT IS FURTHER ORDERED** that plaintiff's motion for summary judgment is **denied.**