[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
Dec. 22, 2009
THOMAS K. KAHN
CLERK

_____

No. 08-16729

_____

D. C. Docket No. 07-00337-CV-HL-5

SHEILA D. LYNCH,

Plaintiff-Appellant,

versus

MICHAEL J. ASTRUE,
Commissioner of Social Security,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Georgia

_____

(December 22, 2009)

Before BLACK, WILSON and COX, Circuit Judges.

PER CURIAM:

Sheila D. Lynch appeals the district court's affirmance of the

Commissioner's denial of disability insurance benefits and Supplemental Security Income pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). The central issue in this case is whether the Commissioner's decision that Lynch's disability ended on December 1, 2004, terminating her Social Security benefits, is supported by substantial evidence. She asserts that the vocational expert's ("VE") testimony as to the number of available jobs in existence is unreliable and does not support the Commissioner's decision. The government responds that the VE provided a sufficient foundation for the reliability of her testimony when she stated that she relied upon her experience to determine the number of jobs in existence.

## I. BACKGROUND

Lynch was first deemed disabled as of September 12, 2000. She was found to have the following severe impairments: depression, a right knee disorder, hypertension, and right wrist tendonitis. Based on these impairments, Lynch received disability insurance benefits ("DIB"), and was found eligible for supplemental security income ("SSI"). The Commissioner subsequently determined that Lynch was no longer disabled as of December 1, 2004, terminating her benefits. Lynch filed a request for an administrative law hearing, and the ALJ heard testimony from Lynch and the VE to determine whether Lynch's disability ended pursuant to § 23(f) of the Social Security Act, 42 U.S.C. § 423(f). *See* Doc.

2

9-2 at 17. After a finding that Lynch was no longer disabled, Lynch sought review of the ALJ's decision by the district court, which upheld the Commissioner's decision to deny benefits.

To determine whether a claimant continues to be disabled, the Commissioner must follow an eight-step evaluation process. 20 C.F.R. 404.1594(f)(1)–(8).[1] After evaluating Lynch's claim under the first seven steps of the sequential evaluation process, the ALJ determined at step seven that Lynch was not able to return to past relevant work as a Nursing Assistant or Mail Handler. Doc. 9-2 at 8. Subsequently, the ALJ proceeded to evaluate Lynch's claim under step eight, and called a VE to testify whether a hypothetical person, having functional limitations like those of Lynch, was capable of performing other jobs in the national economy. After considering the hypothetical questions posed by the ALJ, the VE indicated that Lynch could perform the requirements of two sedentary occupations: a surveillance-system monitor, for which there were 1,000 jobs in

[1] The eight-step sequential evaluation requires the ALJ to consider the following inquiries: (1) Is the individual performing substantial gainful activity; (2) Does she have a severe impairment or combination of impairments that meets or equals the severity of an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (3) If she does not, has there been medical improvement; (4) If there has been medical improvement, is it related to her ability to do work; (5) Does an exception to medical improvement apply; (6) Do all current impairments in combination significantly limit the claimant's ability to do basic work activities; (7) After assessing the residual functional capacity("RFC"), can she perform her past relevant work; and (8) Based on her RFC, age, education, and work experience, does other work exist in the national economy that can she perform.

Georgia and 95,000 jobs in the U.S., and a taper worker,[2] with 300 jobs in Georgia and 35,000 jobs in the U.S. According to the VE, this information was based on the *Dictionary of Occupational Titles* ("DOT") statistics provided by the Georgia Department of Labor, including those for "state OES code" identifier 63099.

At the administrative hearing, Lynch's attorney made an effort to challenge the basis for the number of jobs identified by the VE. Lynch's counsel noted that the DOT referred only to government, not private, surveillance-system monitor jobs. The VE explained that there were some surveillance-system monitor jobs outside government, but that in government transportation terminals in Georgia alone, there would exist at least 1,000 jobs, noting that Hartsfield-Jackson International Airport, the Metro Atlanta Rapid Transit Authority ("MARTA"), and other airports in Georgia all employ enough monitors to survey these facilities at all times. The VE reasoned that these jobs are seen everywhere. Tr. 652. The VE explained that the "state OES code" 63099 identifier was a classification called "all

---

[2] According to the DOT, a taper worker, (DOT# 017.6784-010), "places (tapes) adhesive symbols and precision tape on sheets of mylar in conformance with preliminary drawing of printed circuit board (PCB) to produce master layout: Places, aligns, and secures preliminary drawing of PCB and successive layers of transparent sheets of mylar on lighted drafting table, using register bar. Selects specified symbols and width of tape to indicate peak voltage potential. Cuts tape and places tape and adhesive symbols on specified sheets of mylar to outline board size, to indicate connector pads, placement of various components, and to trace circuitry of PCB as indicated on underlying preliminary drawing, using utility knife, precision grid, and straightedge. Places specified adhesive identification and reference numbers on master layout. Reproduces blueprint copy of master layout, using print machine. Inspects copy to verify accuracy."

other protective service-workers." Within this classification, the VE opined that there are nine job titles, one of which includes a surveillance-system monitor as indicated by the State Department of Labor. Lynch's attorney asked the VE if the job classification included private and government jobs, but the VE acknowledged that she did not know. This answer prompted Lynch's attorney to probe further, requesting that the VE provide a basis for her opinion that there were 1,000 and 300 positions in Georgia for the surveillance-system monitor and taper jobs respectively. The ALJ, however, did not permit Lynch's counsel to complete this line of questioning, and threatened to close the file.

After considering Lynch's age, education, work experience, and residual functional capacity based on the impairments present as of December 1, 2004, the ALJ concluded that Lynch was able to perform a significant number of other jobs in the national economy as prescribed by the VE. Doc. 9-2, at 23; *See* 20 C.F.R. 404.1594(f)(8).[3] The ALJ's written cessation determination indicated that the VE's testimony influenced his conclusion. Consequently, the ALJ found, Lynch's disability had ended.

## II. STANDARD OF REVIEW

[3] 20 C.F.R. § 404.1594(f)(8) provides that "[i]f you are not able to do work you have done in the past, we will consider one final step. Given the residual functional capacity assessment and considering your age, education and past work experience, can you do other work? If you can, disability will be found to have ended. If you cannot, disability will be found to continue."

5

On review, we determine whether the Commissioner's decision was supported by "substantial evidence" and whether the correct legal standards were applied. *Lewis v. Callahan*, 125 F.3d 1436, 1439–40 (11th Cir. 1997). The Act dictates that the [Commissioner's] factual findings are conclusive if supported by "substantial evidence." 42 U.S.C. § 405(g). Therefore "[w]e may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner]" rather, "[w]e must scrutinize the record as a whole to determine if the decision reached is reasonable, and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (internal citations omitted); *Cornelius v. Sullivan,* 936 F.2d 1143, 1145 (11th Cir. 1991). Thus, the scope of judicial review in disability cases is limited. *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986). Even if the evidence preponderates against the Commissioner, we must affirm if the decision reached is supported by substantial evidence. *Sewell v. Bowen,* 792 F.2d 1065, 1067 (11th Cir. 1986); *Barron v. Sullivan*, 924 F.2d 227, 230 (11th Cir. 1991). Notwithstanding this measure of deference, the Court remains obligated to examine the whole record to determine whether substantial evidence supports each essential administrative finding. *See Bloodsworth*, 703 F.2d at 1239. In determining whether substantial evidence exists, the Court must also consider evidence that is favorable as well as

6

unfavorable to the Commissioner's decision. *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Finally, the Commissioner's findings must be grounded in the entire record; a decision that focuses on one aspect of the evidence and disregards other contrary evidence is not based upon substantial evidence. *McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986).

### III. DISCUSSION

In a cessation disability determination, although the claimant generally continues to have the burden of proving disability at the final step, "a limited burden of going forward with the evidence shifts to the Social Security Administration. In order to support a finding that an individual is not disabled at this step, the Social Security Administration is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the claimant can do, given the residual functional capacity, age, education, and work experience." Doc. 9-2 at 18; *See* 20 C.F.R. 404.1594(f)(8). Often the ALJ meets this burden by relying on the testimony of the VE.

However, Lynch challenges the ALJ's reliance on the VE's testimony because the VE could not articulate the basis for her opinion regarding the approximate number of jobs in the economy that she enunciated during the hearing. Lynch also challenges the ALJ's decision to disallow some of her

7

attorney's questions simply because counsel stipulated to the VE's qualifications. Lynch asserts that having expert credentials alone does not guarantee that all opinions issued by an expert are based on sound and reliable methodology. Lynch argues therefore, that the ALJ's decision is not supported by substantial evidence.

Substantial evidence is more than a scintilla, but less than a preponderance: "[i]t means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); *Walden v. Schweiker,* 672 F.2d 835, 838–39 (11th Cir. 1982). Therefore, the evidence must do more than merely create a suspicion of the existence of a fact. *Schweiker*, 672 F.2d at 839 (11th Cir. 1982); *See* 42 U.S.C. §405(g). Testimony that contains an undue degree of speculation is not substantial evidence.

Our review of the record reflects that the ALJ unnecessarily limited Lynch's attorney in his effort to explore the basis for the VE's claim that there are 1,000 surveillance-system monitor jobs and 300 taper jobs existing in Georgia that Lynch could perform. When Lynch's attorney asked the VE how she came up with these numbers, the VE remarked that her calculations were not mathematical, and that she used her best judgment of the employers who employ this type of worker, the people for this occupation, the size of MARTA, the size of Hartsfield/Jackson

Airport: "And that was the basis of my reducing the overall number down to approximately 1,000. In my opinion, if one actually studied, and called, and checked, 1,000 would be very conservative." Tr. 651. When Lynch's attorney probed further, the ALJ restrained him from asking the VE additional questions about the 1,000 jobs: "I'm not allowing any more questions on that." Tr. 654-655. Lynch's attorney asserted that there was no firm basis for the figure, and stated that he could not move on to the next area, until he "completely cover[ed]" the basis for her opinion. Tr. 655. The ALJ explained that he would close the file on the case and take it under advisement if Lynch's attorney continued to ask questions "onto the methodology on the 1,000." Tr. 656. The ALJ however, allowed the file to remain open, but upon the condition that Lynch's attorney would, "ask a question, but not regarding the 1,000 figure on the surveillance [system] monitor, because we can't spend any more time on that." Tr. 657.

It would have been helpful to the ALJ to permit Lynch's counsel to inquire into the mechanics, methodology, and basis for the VE's assessment. When counsel attempted to ascertain how the VE arrived at the numbers that she used at the hearing pertaining to the 300 taper jobs available in Georgia, the following exchange ensued:

> ATTY.     Okay Taper of printed circuits, you said there were 300 of those jobs in Georgia. Correct?

9

VE.       Yes.

ATTY.     Where did you arrive at that figure?

VE.       In the same manner that I arrived at the other figure.

ATTY.     It's an extrapolation from a non-exact job title?

VE.       From a job category.

ATTY.     From a job category, it's an extrapolation to that job title.

VE.       Yes.

ATTY.     What was your methodology in doing that extrapolation?

VE.       The same as before, taking the number of jobs included in the total number, the number of occupations included by the state, and using my best judgment of what is a reasonable number.

          . . . .

ATTY.     Okay. What about your ability to extrapolate—what is your basis for your ability to be able to extrapolate a number?

ALJ.      Now wait. Hold on. What is the basis for your ability to extrapolate a number? Was that your question?

ATTY.     Yes, sir.

ALJ.      I don't understand it.

10

ATTY.      Okay.  I would like to know what skill you have, or what goes into the black box technology where a number comes into your—

ALJ.       I'm not allowing that question.  And the reason I'm not allowing it is because  you've already stipulated that she's an expert.  So there's a predicate there that she has the expertise to render vocational opinions.  So that question really gets to her qualifications to even render an opinion.  So I'm not allowing that question.

ATTY.      Okay.  I'm asking about the methodology still.  What is the basis of your decision? Otherwise, we just have to accept everything as I'm an expert, so you have to believe me.  I would like to know what goes into that so that—

ALJ.       But I think she's explained that so many times. . . . [s]he keeps on saying the same thing.

ATTY.      I go to the category and I make up a number, is what I hear.

ALJ.       Well, that's your interpretation. . . . I don't see her answers ever changing.

           . . . .

           And you're saying that when she testifies as an expert, where her expertise has already been stipulated, you're saying that doesn't satisfy the burden.

ATTY.      Correct.

Tr. 657-660.

11

This exchange reflects that the ALJ blocked the VE from developing and explaining to the claimant's attorney a basis for her interpretation of the sources upon which she relied. Furthermore, we fail to see how a mere stipulation to the VE's qualifications precludes the claimant from questioning the basis for the VE's professional opinion and judgment. In order for the VE's testimony to constitute substantial evidence upon which the ALJ may rely, it would have been helpful to allow the VE to articulate the basis for her conclusions that there are 300 or 1,000 jobs existing in the national economy that Lynch can perform given Lynch's functional limitations. In the absence of such an explanation, we are without "relevant evidence that a reasonable mind might accept as adequate to support" the conclusion that there are other jobs that Lynch is able to perform. *See Perales*, 402 U.S. at 401. Accordingly, we find that the ALJ's decision was not based on substantial evidence.

## IV. CONCLUSION

We find that the Commissioner's decision was not supported by substantial evidence; therefore, we reverse the opinion of the district court affirming the Commissioner's determination and remand to the district court with instructions that the case be returned to the Commissioner for further proceedings.

**REVERSED AND REMANDED with instructions.**

COX, Circuit Judge, dissenting:

I would affirm. The VE's testimony regarding the number of surveillance-system monitor and taper jobs available in Georgia is substantial evidence to support the finding that those jobs exist in significant numbers in the relevant economy.

And, I disagree that the ALJ improperly limited Lynch's counsel's questions regarding the VE's bases for her opinions regarding the number of jobs. Lynch's counsel stipulated that the VE was an expert, and he voiced no objection to her expressing an opinion about the number of jobs available in the relevant economy. Rather, in an effort to impeach the VE's opinion testimony, he asked and received answers to the questions, "Now what is the basis of your numbers? Where do you get the number that there are 1,000 job[s]?" and "Where did you arrive at that figure [300 taper jobs in Georgia]?" (Transcript at 650-54, 57.) He ascertained through his questioning that the VE did not use a mathematical method to derive the numbers of jobs but rather, "based on [her] observation and work in the field," applied her "best judgment of the employers who employ . . . people for [these] occupation[s]" to reduce the numbers provided by the Department of Labor from job categories to a "reasonable number" in these two specific job titles. (*Id*.) The ALJ's refusal to allow Lynch's counsel to repeatedly question the VE about the

13

method by which she derived her opinion, after receiving answers to those questions, was not improper and did not cause the record evidence of the number of jobs to become insufficient to sustain the decision.