James D. LEWIS, Appellant,

v.

Margaret M. HECKLER, Secretary of Health and Human Services, Appellee.

No. 85–2514.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 12, 1986.

Decided Jan. 8, 1987.

Robert W. Pratt, Dis Moines, Iowa, for appellant.

Robert C. Dopf, Asst. U.S. Atty., Des Moines, Iowa, for appellee.

Before LAY, Chief Judge, and WOLLMAN and MAGILL, Circuit Judges.

LAY, Chief Judge.

James Lewis appeals from the judgment of the district court[1] entered in favor of the Secretary of Health and Human Services denying him disability benefits under 42 U.S.C. § 423 (1982).

## Background

James Lewis is a fifty-four year old man who has work experience as a welder, millwright and layout person. He has had nine years of formal education but also earned his Graduate Equivalency Degree while in the service. In late 1981, Lewis suffered a heart attack and underwent open heart surgery. The surgery was successful and Lewis returned to work. Until December 1984, aside from some shortness of breath, Lewis suffered no serious side effects from either the attack or the surgery. At that time, Lewis claims he began to suffer chest pains which radiated down his left arm and made his left hand half numb, symptoms similar to those he experienced before his heart attack. A medical examination by Dr. Fouad A. Salama performed several weeks later, however, revealed no symp-toms indicative of any impending complications.

Before the 1984 complications, on April 9, 1983, Lewis injured his back at work when he fell on his tailbone. This injury provides the primary basis for Lewis' disability claim. He was first examined by Dr. M. Flapan, a specialist in orthopedics, on April 18. X-rays revealed a cervical spondylosis at the C6–C7 level and degenerative disc disease in the L5–S1 interspace. His fall on April 9 aggravated these conditions. Dr. Flapan recommended that Lewis refrain from working for two weeks, and prescribed pain medication. Three subsequent examinations, however, on May 2, May 19, and June 6, revealed no improvement in Lewis' lower back. A CAT scan on June 9 suggested a herniated disc at the L5 level.

On June 22, 1983, Lewis was admitted to Iowa Lutheran Hospital. A myelogram performed by Dr. M.J. Quinn the following day revealed a marked bulging of the L4–L5 interspace and an amputation of the S1 nerve root on the left side. On June 24, Dr. Flapan gave Lewis Chymopapain injections at the L4–L5 and L5–S1 levels. Lewis was discharged a week later.[2]

On July 22, 1983, Lewis informed Dr. Flapan that he no longer experienced pain or discomfort thanks to the Chymopapain injection, but Dr. Flapan determined that he was still disabled and unable to work due to the effects of that injection. Another follow-up examination on August 26, revealed complete relief of symptoms in Lewis' left leg, but discomfort in the right buttock and stiffness in the mornings. The doctor's opinion at that time was that Lewis was still disabled. On October 7, Lewis complained of low back discomfort radiating up between his shoulders, which Dr. Flapan attributed to difficulties relating to

1. The Honorable William C. Stuart, United States District Court for the Southern District of Iowa, presiding.

2. On July 11, 1983, Lewis returned to Iowa Lutheran Hospital complaining of abdominal pain and constipation caused by his pain medication. An emergency colostomy was per-formed by Dr. James Caterine for ruptured diverticulitis of the sigmoid colon. Follow-up procedures went well and as of December 5, 1983, Dr. Caterine had discharged Lewis from his care and had determined that this was not a disabling problem.

Lewis' colostomy. None of the above examinations, however, revealed any weaknesses in Lewis' legs.

On October 20, 1983, Lewis was examined by Dr. William Boulden, who believed that, given the nature of Lewis' problems, the wrong procedure had been performed. He believed that due to the substantial amount of foraminal stenosis present, Lewis would be a candidate for a laminectomy, the operation he should have had in the first place. Dr. Boulden confirmed this a month later after a second CAT scan had been performed. He recommended that Lewis undergo this procedure as soon as he had fully recovered from his bowel surgeries and received the approval of his cardiologist. Lewis has yet to undergo this procedure.

Lewis filed an application for disability benefits with the Department of Health and Human Services on January 16, 1984. Four days later he was examined by Dr. Flapan for the last time. Dr. Flapan refused to prescribe further pain medication for Lewis, due to Lewis' history of drug abuse, and noted that he had little more in the way of treatment to offer Lewis. On February 3, 1984, Lewis underwent a consultative examination by Dr. Fouad Salama at the request of the Secretary. Lewis explained to Dr. Salama that the Chymopapain injections initially relieved his discomfort, but that the back pain had returned and lately was getting worse. Dr. Salama found a marked narrowing of the intervertabral disc space at L5–S1 and, to a lesser degree, at L4–L5. Due to Lewis' back condition and pain, Salama gave him a guarded prognosis.

Another examination by Dr. Edward R. Posner on February 22, 1984, revealed that in Posner's opinion, Lewis was capable of frequent lifting and carrying of up to ten pounds, with a maximum lifting ability of twenty pounds; standing or walking up to six hours a day; sitting up to six hours a day; and occasional climbing, stooping, kneeling, and crouching. Dr. Posner concluded that Lewis was capable of performing *light* work activity as it is defined in 20 C.F.R. § 404.1567(b) (1986). In a May 15, 1984, examination, Dr. William Minks reached the identical conclusions.

Based upon this information, Lewis' application for benefits was denied as was his request for reconsideration. He requested a hearing which was held before a Social Security Administration Administrative Law Judge (ALJ) on January 7, 1985. At the hearing Lewis testified that aside from the recent pain in his chest and left arm, he has experienced no cardiac problems since his bypass surgery. He testified that he does have back pain which increases upon bending and lifting, but has no problems stooping or squatting. Upon the advice of his heart doctor, he takes two mile walks four days a week and he is able to be on his feet up to three hours a day.

The ALJ found that Lewis' back problem prevented him from returning to his past relevant work as a welder, millwright, or layout person. He did find, however, without indicating whether the burden of proof had shifted to the Secretary, that Lewis had the residual functional capacity for moderate to heavy lifting and carrying, as well as frequent bending and was therefore capable of performing light work as defined in 20 C.F.R. § 404.1567(b). He also found no significant nonexertional limitations. Accordingly, the ALJ applied the Medical-Vocational Guidelines (*see* 20 C.F.R. Part 404, Subpart P, Appendix 2 (1986)), and by finding that Lewis fell within the "closely approaching advanced age" category, had a high school education, and had previous work experience of a skilled nature, Rule 202.14 mandated a finding of not disabled. The district court affirmed the denial of benefits, holding that although the ALJ failed to expressly recognize the need for a shift in the burden of proof once Lewis proved he could no longer perform his past relevant work, this failure was harmless in this case since the record clearly indicated Lewis would have been denied benefits regardless of the allocation of the burden of proof. Lewis appeals.

## Discussion

 It is well established that once a claimant proves to the ALJ that the claimant's impairment prevents him from returning to his past relevant work, the burden of proof shifts to the Secretary, who then has a duty to establish that the claimant is not disabled within the meaning of the Social Security Act, 42 U.S.C. § 423 (1982). *E.g., Tucker v. Heckler*, 776 F.2d 793, 795 (8th Cir.1985). This court requires that the ALJ expressly recognize in his or her written decision that the burden of proof has shifted to the Secretary. *See, e.g., Dover v. Bowen*, 784 F.2d 335, 337 (8th Cir.1986). In cases where the ALJ fails to expressly recognize this shift, we will assume that the burden of proof improperly remained on the claimant to prove he or she was disabled and we will remand the matter for further proceedings unless the case is one in which the outcome should be clear regardless of who shoulders the burden of proof. *E.g., Lanning v. Heckler*, 777 F.2d 1316, 1317 (8th Cir.1985). In the present case, the ALJ failed to recognize a shift in the burden of proof.

This case must be remanded. It involves essentially the same errors we have discussed in *Kirksey v. Heckler*, 808 F.2d 690, (filed this date). In this case, the medical evidence is undisputed that Lewis suffers from degenerative disc disease in his lower back and will never recover to a point where he can return to heavy labor. As recently as March 6, 1984, his family physician noted, "He appears to me, at this time, to be disabled for industrial purposes." Following a consultative exam, Dr. Salama concluded that Lewis was suffering from degenerative disc disease which caused him marked pain on the straight leg raising test and lower back pain in general. Dr. Salama, however, gave no real opinion as to whether Lewis was disabled. He merely concluded, "Disability for this patient will be based on, first, his lumbar disc disease, and secondly on his coronary artery disease." None of the doctors who examined Lewis had any reason to doubt his allegations of pain.

The Secretary's conclusion that Lewis is capable of performing light work is supported in part by reports of Drs. Posner and Minks. Both physicians concluded that Lewis is capable of lifting and carrying a maximum of twenty pounds and of frequent lifting and carrying of up to ten pounds. They found that he could stand or walk a total of six hours and sit a total of six hours a day. Lewis was capable, they concluded, of occasional climbing, balancing, stooping, kneeling, and crouching. Both also noted that Lewis complained of pain.

 If the Secretary's decision needed to be based upon this evidence alone, we would have to agree that substantial evidence on the record as a whole supports the Secretary's finding that Lewis was not disabled, notwithstanding the failure to properly shift the burden of proof. However, there is a second element to the Secretary's burden which we believe the Secretary failed to meet. In addition to establishing that Lewis was capable of performing some other type of work, the Secretary must also show that jobs exist in the national economy that realistically suit the claimant. *O'Leary v. Schweiker*, 710 F.2d 1334, 1338 (8th Cir.1983). In making this determination, the Secretary must take into consideration not only the claimant's residual functional capacity, but also his age, education, and previous ·work experience. *McCoy v. Schweiker*, 683 F.2d 1138, 1146–47 (8th Cir.1982). Where a claimant suffers solely from one or more exertional impairments, the Secretary may refer to the Medical-Vocational Guidelines found in 20 C.F.R. Part 404, Subpart P, Appendix 2 (1986), to determine whether jobs which the claimant can perform are available in the national economy and, consequently, whether the claimant is disabled. *Tucker v. Heckler*, 776 F.2d 793, 795 (8th Cir.1985); *Haynes v. Heckler*, 716 F.2d 483, 485 (8th Cir.1983). When, however, a claimant also suffers from a non-exertional impairment, such as pain, which causes the claimant's relevant characteristics to differ in any material respect from those characteristics

contemplated by the Guidelines, the Guidelines may not be applied, and the case law requirements pre-existing the Guidelines, including use of expert vocational testimony, retain their full vigor. *Tucker*, 776 F.2d at 795; *McCoy*, 683 F.2d at 1146.

In the present case, the ALJ applied the Guidelines and found that although Lewis does undoubtedly suffer from some aches and pains, there is no subjective evidence that they would significantly affect Lewis' residual functional capacity and, consequently, his ability to work. The ALJ noted that although Lewis testified that his pain was disabling, he was nevertheless able to perform more physical exertional activities than are normally performed by individuals with disabling pain. Lewis also has not experienced any significant weight change and there was no evidence of any muscular deterioration or atrophy. His mind was alert and he has not experienced any emotional problems, nor does he use a back brace or physical therapy. Upon this reasoning, the ALJ determined that Lewis' nonexertional pain did not impair his physical ability to carry out light work.

 Upon our review of the record as a whole, we cannot conclude that the ALJ's failure to shift to the Secretary the burden of proving that Lewis was disabled was harmless error. The tenor of the ALJ's opinion is that Lewis failed to prove that his back pain actually diminishes his residual functional capacity enough to make the grid inapplicable. This is not Lewis' burden to bear. In order to use the grid under our decisions, the Secretary has the burden of proving that Lewis' pain is not incapacitating. Here, as in *Kirksey, supra,* the impairment of the joint spaces between L4–L5 and L5–S1 is not disabling in itself; the disability which arises from the injury is the direct pain associated with it. Thus, as in *Kirksey, supra,* the allocation of the burden of proof could be outcome determinative. Accordingly, we remand this case

to the district court for further proceedings. If there exists substantial evidence that Lewis' back pain in any significant way diminishes his exertional abilities, the Guidelines are inapplicable and the Secretary will be required to present expert vocational testimony on the question of whether jobs exist in the national economy which Lewis can perform, given both his exertional and nonexertional limitations. *See Tucker,* 776 F.2d at 795; *Parsons v. Heckler,* 739 F.2d 1334, 1339 (8th Cir. 1984).[3]

The case is remanded to the district court with instructions to remand to the Secretary to conduct further proceedings.

---

**3.** Lewis also alleges that he has a cardiac impairment, and problems with depression and drug abuse, each of which render him disabled within the meaning of the Act. We have reviewed the references to these conditions in the record and agree with the ALJ that the evidence does not support these claims.