**Jerry D. TALBOTT, Appellant,**

v.

**Otis R. BOWEN, Secretary of Health & Human Services, Appellee.**

**No. 86–2507.**

United States Court of Appeals, Eighth Circuit.

Submitted May 14, 1987.

Decided June 25, 1987.

Robert W. Pratt, Des Moines, Iowa, for appellant.

Frances Reddis, Kansas City, Mo., for appellee.

Before LAY, Chief Judge, TIMBERS,[*] Senior Circuit Judge, and WOLLMAN, Circuit Judge.

LAY, Chief Judge.

Jerry Talbott appeals from the judgment of the district court[1] entered in favor of the Secretary of Health and Human Services denying him disability benefits under 42 U.S.C. § 423 (1982).

**Background**

Jerry Talbott is a fifty-year-old man who, in 1977, was severely injured when the farm tractor he was driving was struck by a gravel truck. The truck apparently rolled over his chest causing severe multiple injuries including a flail chest with a fracture of the seventh thoracic vertebra, a fracture-dislocation of the left humerus, bilateral fractures of eleven ribs, a blow-out fracture of the right orbit, left tibial plateau fractures, a fracture of the sacroiliac and the upper third of the left fibula. Talbott also suffered multiple lacerations and contusions and experienced anemia secondary to blood loss. Shortly after his hospitalization, both lungs collapsed requiring respiratory aids for several weeks. He underwent a tracheostomy and a laparoscopy. He was released from the hospital three months after the accident, having

---

[*] The HONORABLE WILLIAM H. TIMBERS, Senior Circuit Judge for the United States Court of Appeals for the Second Circuit, sitting by designation.

1. The Honorable William C. Stuart, United States District Court for the Southern District of Iowa, presiding.

responded well to all treatment with the exception of the left humerus. In early 1978, he underwent an open reduction and internal fixation of that bone which was successful, for the most part, but left him with residual weakness, pain, some numbness, and a slightly limited range of motion.

Due to his injuries, Talbott was unable to continue his prior work as a carpenter and linen delivery salesman. Talbott was immediately granted social security disability benefits which he drew until 1979, when he was elected to the county board of supervisors. Talbott testified that the job, for which he drew, on average, $10,000 annually, was not particularly demanding and merely required that the three member board meet once a week and that at least one of the members be in the office for the remainder of the regular working hours. Talbott ran for the position again in 1982, but was not re-elected, and believed that his original appointment to the position was due mainly to the sympathy of the county's voters who knew about his accident.

On January 5, 1983, Talbott applied to the Secretary for disability benefits, citing December 30, 1982, as the date of the onset of his disability. The application was denied initially and on reconsideration and became final when Talbott did not ask for a hearing. Talbott filed a second application for benefits on March 29, 1984, again citing December 30, 1982, as the date of the onset of his disability. The Social Security Administrative Law Judge (ALJ) treated this as a request to reopen the prior application, but finding that there was no new material evidence on the issue of his disability, the ALJ denied the application to reopen the matter and set March 1, 1983, the date of the denial of Talbott's request for reconsideration of the original denial, as the date of the onset of Talbott's disability for purposes of this second application. Talbott does not contest this ruling.

Talbott was seen twice, once on January 14, 1983, and again on April 24, 1984, by Dr. J.B. McConville for consultative examinations. McConville noted on the first examination that he had weakness in his left arm and was able to carry up to fifty pounds. He noted back pain which became aggravated by prolonged sitting, standing, and heavy lifting. He also noted swelling and pain in the left leg when Talbott stood for more than a half hour or walked more than a quarter mile. Talbott reported pain with changes in the weather and shortness of breath with exertion. Based upon Talbott's description of symptoms and his own physical examination, McConville found left arm weakness, mid-back pain, and left leg pain.

Two months after that examination, Talbott suffered three fractures in the right leg after being kicked by a horse. Upon the consultative examination by Dr. McConville a year later, based on Talbott's reapplication for benefits, he noted substantially the same findings as in his first report with the addition of mild right knee pain.

Beginning in June of 1983, Talbott underwent an evaluation by the Iowa Department of Vocational Rehabilitation. The department concluded that because of his physical limitations, the range of work activity available to him was restricted and that he was experiencing a "substantial handicap" to his employment. After conducting tests and interviews with Talbott, the department concluded that although Talbott would be a conscientious worker, he would be slow to grasp instructions and was not suitable for a decision-making role or one with a variety of activities, nor would he be a very forceful salesman. The report suggested that he could, however, handle certain types of cashiering jobs, time keeper, or an elevator job where he was weighing grain.

At the hearing before the ALJ, Talbott testified that he still has pain from the accident, for which he takes Tylenol, but he is not under a doctor's care because he cannot afford it. He does handy-man work on a part-time basis, but cannot do this work full-time because of pain in his back and left leg. The pain in both areas is dull and constant but becomes sharp with overexertion. He cannot stand on a ladder for any appreciable amount of time and al-

though he can bend, stoop, and squat, it is not without attending pain. He stated he could stand for a half to one hour without pain and could walk up to a quarter mile, if he took his time, before he would have to stop and rest five minutes to catch his breath. He stated he could sit for three-quarters of an hour to one hour before the discomfort would force him to get up and move about. He believed he was capable of lifting ten or fifteen pounds. He also testified to problems with his memory since the accident.

The ALJ, without indicating which party bore the burden of proof, concluded that Talbott was unable to perform his past relevant work as a carpenter or linen delivery salesman. He did find, however, that Talbott was able to perform a "full range" of light work, but that his capacity for light work was reduced by his inability to stand on ladders, his difficulty with cold and humid weather, and his intolerance to dust and fumes. In spite of his findings that Talbott had made credible allegations of pain in his back, left arm, and left leg, the ALJ applied the Medical-Vocational Guidelines set forth in 20 C.F.R. Part 404, Subpart P, Appendix 2, and made a finding that Talbott was not disabled. The appeals council denied Talbott's request for reconsideration. On appeal, the district court affirmed the decision of the Secretary noting that although the ALJ did err in failing to expressly shift the burden of proving Talbott's disability to the Secretary, once it was established that he was unable to return to his past relevant work, and in using the Medical-Vocational Guidelines in spite of Talbott's non-exertional limitations, the ALJ's errors had no effect on the outcome of Talbott's claim. Talbott appeals.

**Discussion**

■ Under the Social Security Act, Talbott will be considered disabled if he is found to be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be * * * expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (1982); *see Jelinek v. Heckler,* 764 F.2d

507, 509 (8th Cir.1985). If the ALJ finds that the claimant cannot return to his past relevant work, the burden of proof shifts to the Secretary, who then has the duty to establish that the claimant is not disabled within the meaning of the Act. *Lewis v. Heckler,* 808 F.2d 1293, 1297 (8th Cir.1987); *Tucker v. Heckler,* 776 F.2d 793, 795 (8th Cir.1985). This court requires that the ALJ expressly recognize this shift in his written decision and when he fails to do so, we will assume that the burden improperly remained on the claimant to prove he was disabled. *Lewis,* 808 F.2d at 1297; *Lanning v. Heckler,* 777 F.2d 1316, 1317 (8th Cir.1985). Unless the case is one in which the outcome should be clear regardless of who bears the burden of proof, *see, e.g., Chitwood v. Bowen,* 788 F.2d 1376, 1378 (8th Cir.1986) (per curiam), we will remand for further proceedings, *e.g., Lewis,* 808 F.2d at 1297, or, in cases where a hearing would simply delay receipt of benefits, we will reverse and award benefits outright. *See Cook v. Bowen,* 797 F.2d 687, 691 (8th Cir.1986).

The district court was fully cognizant of these rulings and determined that although the ALJ had made errors in his consideration of this case, those errors were not prejudicial. The trial court observed that the ALJ applied the grid in this case to make a finding of not disabled even though nonexertional limitations do not allow the claimant to perform the full range of light work. The court nevertheless found that the record supported the ALJ's determination that testimony of a vocational expert was not necessary. The court further found that notwithstanding the ALJ's failure to acknowledge that the burden of proof had shifted to the Secretary, the denial of benefits should be affirmed since "there is substantial evidence in the record to support the ALJ's decision that the claimant is not disabled within the meaning of the Social Security Act." We respectfully disagree with these findings.

■ In presenting evidence that a claimant is not disabled, the Secretary must prove by medical evidence that the claimant has the residual functional capaci-

ty to do other kinds of work and that there are jobs available in the national economy that realistically suit the claimant. *O'Leary v. Schweiker,* 710 F.2d 1334, 1338 (8th Cir.1983). "In determining whether there are jobs available that a claimant can perform, the Secretary must consider the claimant's exertional and nonexertional impairments, together with the claimant's age, education, and previous work experience." *Id.*

In this case, the ALJ found that Talbott was capable of performing light work as defined in 20 C.F.R. § 404.1569 (1986), but that his capacity to perform the *full range* of light work was reduced by Talbott's inability to stand on ladders, his difficulty with cold and humid weather, and his intolerance of dust and fumes. Furthermore, the ALJ found that Talbott had asserted credible allegations of pain in his left arm, back, and left leg which significantly limit his capacity for lifting and carrying objects. We have held on numerous occasions that where a claimant suffers from a nonexertional impairment, such as pain, alone or in combination with exertional impairments, that significantly limits his ability to perform the *full* range of work contemplated by the Medical-Vocational Guidelines, the ALJ may not rely on the guidelines to satisfy the Secretary's burden of proof, but must instead produce expert vocational testimony. *See, e.g., Chitwood,* 788 F.2d at 1378; *O'Leary,* 710 F.2d at 1339. In this instance, the ALJ acknowledged that Talbott had credible allegations of pain which did limit his ability to perform the full range of light work, but applied the guidelines nevertheless. We hold this was reversible and fundamental error. The grid cannot be applied unless the full range of light work encompassed by the grid can be performed by the claimant.

As we stated in *McCoy v. Schweiker,* 683 F.2d 1138 (8th Cir.1982), the grid is the administrative substitute for the vocational expert where nonexertional impairments do not otherwise limit the claimant from performing the full range of light work contemplated within the guidelines. *Id.* at 1144, 1146. Where a nonexertional impair-

ment does so limit the claimant, the Secretary can only carry his burden of proof through use of a vocational expert who can realistically appraise available work that can be performed by the claimant, given his existing abilities. *Id.* at 1146; *see also Tucker,* 776 F.2d at 795; *Jelinek,* 764 F.2d at 511. Thus, where a claimant suffers from a nonexertional impairment which substantially limits his ability to perform gainful activity, the grid cannot take the place of expert vocational testimony. *Mallett v. Schweiker,* 721 F.2d 256, 258 (8th Cir.1983) (per curiam). In the present case, Talbott testified that he was unable to stand for more than thirty to sixty minutes, to sit for more than forty-five to sixty minutes, or to walk more than a quarter mile, if he took his time. The Secretary's own regulations define "light work" as follows:

(b) Light work. Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. *To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.*

(Emphasis added.) Given that the ALJ found Talbott's allegations of a nonexertional impairment credible, it was clearly incorrect to attribute to Talbott the capability of performing light work under the guidelines. In fact, the above quoted guidelines fully corroborate the claimant's disability. We therefore find that substantial evidence on the record as a whole supports Talbott's claim of disability within the meaning of the Social Security Act. Accordingly, we reverse and direct the Secretary to grant Talbott an award of benefits.