United States Court of Appeals
For The Eighth Circuit

_____

No. 97-3873
_____

John Ernest Wilcutts,                *
                                      *
     Appellant,                       *
                                      *
     v.                               *          Appeal from the United States
                                      *          District Court for the Western
Kenneth S. Apfel,[1]                  *          District of Missouri.
Commissioner of Social Security       *
                                      *
     Appellee.                        *

_____

Submitted:  April 16, 1998

Filed:    May 11, 1998

_____

---

[1]Kenneth S. Apfel was confirmed by the Senate and sworn in on September 29, 1997, to serve as Commissioner of Social Security.  In accordance with Fed. R. App. P. 43(c)(1), Kenneth S. Apfel should be substituted for John J. Callahan, Ph.D., as the defendant in this suit.  No further action need be taken to continue this suit by reason of the last sentence of Section 205 (g) of the Social Security Act, 42 U.S.C. § 405 (g).

Before RICHARD S. ARNOLD,[2] Chief Judge, LOKEN, Circuit Judge, and PRATT[3], District Judge.

PRATT, District Judge

John Ernest Wilcutts appeals from the judgment of the United States District Court for the Western District of Missouri which upheld the final decision of the Commissioner that he is not entitled to Supplemental Security Income benefits based on disability.

At the time of the administrative hearings and decisions,[4] Wilcutts was 51 and 52 years of age respectively. Wilcutts injured his right shoulder and elbow while lifting tiles on May 28, 1991. AR at 250. On August 14, 1991, Wilcutts underwent surgery to repair a right rotator cuff tear and marked subacromial impingement. AR at 204. On March 17, 1992, it was noted, after an examination, that the rotator cuff had pulled loose, at least partially. AR at 222. On January 26, 1993, Larry R. Robbins, D.O., a certified disability examiner, saw Wilcutts on behalf of the State of Nevada Industrial

---

[2]The Hon. Richard S. Arnold stepped down as Chief Judge of the United States Court of Appeals for the Eighth Circuit at the close of business on April 17, 1998. He has been succeeded by the Hon. Pasco M. Bowman II.

[3.] The Hon. Robert W. Pratt, United States District Judge for the Southern District of Iowa, sitting by designation.

[4.] Wilcutts appeared before an Administrative Law Judge (ALJ) on January 6, 1994. This ALJ issued his decision May 5, 1994. The ALJ's decision was reviewed by Administrative Appeals Judges who, on October 7, 1994 remanded the case for vocational expert testimony. Wilcutts appeared before a second ALJ on April 4, 1995. The second ALJ issued a Notice Of Decision - Unfavorable on August 15, 1995. The second ALJ's decision was affirmed by the Appeals Council on June 21, 1996.

Insurance System for a rating of the Workers' Compensation injury.  AR at 266-274.  Dr. Robbins opined that Wilcutts' case could be adjudicated and closed with an award of 14%.  AR at 274.  Dr. Robbins offered no opinion about Wilcutts' ability to work

other than noting the limitation of motion on Wilcutts' right shoulder. AR at 273-74. Dr. Robbins stated explicitly that for purposes of his evaluation, Wilcutts' other complaints were not considered. AR at 273.

Wilcutts also suffers from congenital low back problems with recurrent lumbosacral sprains. X-rays showed "a congenital low back situation with very short 12th ribs and or a transitional S-1 vertebra." AR at 198, 471.

Wilcutts has complained of cervical pain, (AR at 242), and right elbow pain, (AR at 246). On April 1, 1982, while at work, a nail gun exploded rupturing Wilcutts' right eye. AR at 332. The eye was removed on April 11, 1982. AR at 313. Thereafter, Wilcutts was fitted with a prosthetic eye. AR at 46.

On September 21, 1994, Wilcutts underwent a laparoscopic cholecystectomy. AR at 475. On September 22, 1995, Wilcutts underwent a Hartmann Sigmoid Colectomy because of perforated diverticulitis in his sigmoid colon. AR at 558. At the April 1995 hearing, Wilcutts testified that since the surgery he has experienced diarrhea with a frequent need to use a bathroom. AR at 85, 95.

Wilcutts receives chiropractic treatment from Robert L. Cavins, Jr., D.C. On December 28, 1993, Dr. Cavins opined that Wilcutts should lift no more than ten pounds "and only in a non-repetitious manner." AR at 294. Dr. Cavins opined that Wilcutts could not walk or stand more than three hours in an eight hour day and only thirty minutes at a time. Dr. Cavins said that Wilcutts could sit four hours of an eight hour day and thirty minutes at a

time.  AR at 293.  Dr. Cavins said Wilcutts should never be required to climb or balance and that his reaching and handling ability was limited.  AR at 294.

The record reflects that Wilcutts underwent two examinations by psychologists.  He was seen by Frances J. Anderson, Psy.D., on April 29, 1993 at the request of

Disability Determination Services.  Dr. Anderson administered a Wechsler Adult Intelligence Scale-Revised (WAIS-R) on which Wilcutts achieved a verbal IQ of 86, a performance IQ of 93, and a full scale IQ of 88.  The full scale IQ was, according to Dr. Anderson, in the low average range of intelligence. AR at 280.  To assist in the determination of Wilcutts' eligibility for medical assistance and general relief, he was seen by Kenneth R. MacDonald, Ph.D., who administered a mental status examination.  Wilcutts told Dr. MacDonald:  "I cannot read and can barely write my name."  AR at 305. During the mental status examination, Wilcutts was unable to recite the alphabet.  AR at 307.  Dr. MacDonald concluded his report:

> John Wilcutts is a 51 year old Caucasian male, who has been married five times. He is currently living with his wife in a trailer in Branson.  He has a long history of severe back difficulties which remain acute.  He shows a problem intellectually and is likely to be in the Borderline range of intelligence. He does show a maladaptive life-style. There is no information to suggest a psychotic process, although memory functions for remote events was disturbed, recent memory appears to be intact.  His daily activities are restricted due to physical and financial limitations.  Independent living skills are intact.  He has not been able to obtain substantial or gainful employment since his last injury involving his shoulder.  Mr. Wilcutts' history of physical problems when combined with his difficulty with reading and writing, as well as his financial problems, indicates a persona with a maladaptive life-style who may benefit from further

assistance.

AR at 308.  Thereafter, Dr. MacDonald diagnosed, on Axis I, Dysthymia.  The Axis II diagnosis was borderline intellectual functioning and personality disorder not otherwise specified.  Dr. MacDonald opined that the severity of psychosocial stressors was extreme and that Wilcutts' global assessment of functioning was 50, "serious symptoms."  Id.  Dr. MacDonald also completed a mental residual functional capacity

form that indicated Wilcutts is markedly limited in his ability to perform activities within a schedule, maintain regular attendance, and to be punctual within customary tolerances. Dr. MacDonald opined that Wilcutts is moderately limited in his ability to remember locations and worklike procedures; to understand and remember detailed instructions; to carry out detailed instructions; to maintain attention and concentration for extended periods; to work in coordination with or proximity to others without being distracted by them; the ability to make simple work-related decisions; and, to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. AR at 303.

At the January 1994 hearing, when asked about his ability to read, Wilcutts responded: "Very little outside of my name and maybe dog and cat or some small word." AR at 46. At the time that the application was made, an interviewer at the Social Security Administration wrote: "Appeared to not be able to read very well if at all." AR at 142. In a letter dated August 23, 1995, which was submitted to the Appeals Council, Wilcutts' wife stated that he is unable to read and write. AR at 486.

Both administrative law judges found that Wilcutts, although unable to do his past relevant work, has the residual functional capacity for light work. The first ALJ held that Rules 202.11 and 202.12[5] of the Medical

---

5. The first ALJ held that the issue of transferability of skills was irrelevant since both rules mandate a finding of not disabled. Rule 202.11 provides that an

Vocational Guidelines (Grid), 20 C.F.R. Pt. 404, Subpt. P, App.2, mandated a finding of not disabled.  The second ALJ held that Wilcutts possesses skills which are transferable to light and sedentary work and, therefore, is not disabled.

individual closely approaching advanced age with a limited education and a work background of skilled or semi-skilled work with no transferable skills is not disabled.  Rule 202.12 provides that an individual with the same profile except for the possession of transferable skills is also not disabled.

## DISCUSSION

In *Frankl v. Shalala,* 47 F.3d 935, 937 (8th Cir. 1995), we stated our standard of review in Social Security cases:

> We will uphold the Secretary's final decision if it is supported by substantial evidence on the record as a whole. Substantial evidence is that which a reasonable mind might accept as adequate to support the [Commissioner's] conclusion. In assessing the substantiality of the evidence, we must consider evidence that detracts from the [Commissioner's] decision as well as evidence that supports it. We may not, however, reverse the [Commissioner's] decision merely because substantial evidence also would have supported an opposite decision.
> (internal quotations and citations omitted).

(Quoting *Smith v. Shalala*, 987 F.2d 1371, 1373-74 (8th Cir. 1993))

In *Gavin v. Heckler*, 811 F.2d 1195, 1199 (8th Cir. 1987) the Court discussed the difference between "substantial evidence" and "substantial evidence on the record as a whole." "Substantial evidence on the record as a whole" wrote then Chief Judge Lay, "requires a more scrutinizing analysis" than the "substantial evidence" test. The Court went on to say:

> In the review of an administrative decision, "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v.*

*National Labor Relations Bd.*, 340 U.S. 474, 488, 71 S.Ct. 456, 464, 95 L.Ed. 456 (1951). Thus, the court must also take into consideration the weight of the evidence in the record and apply a balancing test to evidence which is contradictory. *See Steadman v. Securities and Exchange Commission*, 450 U.S. 91, 99, 101 S.Ct. 999, 1006, 67 L.Ed.2d 69 (1981). It follows that the only way a reviewing court can determine if the entire record was taken

```
into consideration is for the district
court to evaluate in detail the evidence
it used in making its decision and how
any contradictory evidence balances out.
```

*Gavin v. Heckler*, 811 F.2d at 1199. In short, a reviewing court should neither consider a claim de novo, nor abdicate its function to carefully analyze the entire record. *Brinker v. Weinberger*, 522 F.2d 13, 16 (8th Cir. 1975).

Both administrative law judges found that Wilcutts is unable to return to his past relevant work. In his decision, the second ALJ recognized that the burden had shifted to the Commissioner. AR at 24. In so doing, the second ALJ cited *Talbott v. Bowen*, 821 F.2d 511 (8th Cir. 1987). In *Talbott*, 821 F.2d at 514-15, Judge Lay wrote:

> If the ALJ finds that the claimant cannot return to his past relevant work, the burden of proof shifts to the [Commissioner], who then has the duty to establish that the claimant is not disabled within the meaning of the Act. *Lewis v. Heckler*, 808 F.2d 1293, 1297 (8th Cir. 1987); *Tucker v. Heckler*, 776 F.2d 793, 795 (8th Cir. 1985).
>
> ....
>
> In presenting evidence that a claimant is not disabled, the [Commissioner] must prove by medical evidence that the claimant has the residual functional capacity to do other kinds of work and that there are jobs available in the national economy that realistically suit the claimant. *O'Leary v. Schweiker*, 710 F.2d 1334, 1338 (8th Cir. 1993)

In *McCoy v. Schweiker*, 683 F.2d 1138, 1147 (8th Cir. 1982)(en banc), the Court wrote that the most important issue in a disability determination is the issue of residual functional capacity. The residual functional capacity which must be found, wrote the Court, is the ability to do the requisite physical acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world. *Cf. Thomas v. Sullivan*, 876 F.2d 666, 669 (8th Cir. 1989).

Wilcutts, while conceding that he has a residual functional capacity for light work, argues that he should be found disabled because he is unable to read or write. Wilcutts bases this argument on the testimony of the vocational expert who testified that if one of the second ALJ's hypothetical questions were modified to include illiteracy, the jobs previously identified would not be possible. AR at 110. The second ALJ, however, did not believe that Wilcutts was illiterate because, among other reasons, he was able to achieve a verbal IQ score of 86. "This performance is impossible for an illiterate person," wrote the second ALJ. AR at 23. The second ALJ also wrote that the WAIS-R is "a pencil and paper test." Id. The second ALJ's finding that Wilcutts is not illiterate was heavily influenced by the result of the IQ test. We believe that the second ALJ was mistaken in his view that the WAIS-R tests an individual's ability to read and write. The WAIS-R is administered orally. The test is read to the subject and therefore requires only the ability to comprehend oral questions. There is one sub-test, the vocabulary, which allows the subject to view a list of words which he or she is asked to define. The subject, however, need not be able to read the words which are recited by the examiner as the subject is asked to provide definitions. There is also a part of the test where the subject manipulates objects. At oral argument, counsel for the Commissioner did not defend the second ALJ's statement that the WAIS-R is proof that Wilcutts is able to read.

The burden of proof was on the Commissioner to come forward with medical evidence that Wilcutts has the ability to work. The issue of Wilcutts' illiteracy was before the Commissioner when he was reviewing the second ALJ's decision. Wilcutts had testified at the first hearing that he could not read or write. Dr. MacDonald and the worker at the Social Security Administration observed that Wilcutts could not read. Wilcutts' wife corroborated his testimony that he is unable to read. Finally, the vocational expert testified that illiteracy would have a significant impact on Wilcutts' ability to work. All of these factors should have alerted the Commissioner to the need to establish whether or not Wilcutts is literate. This Court has stated numerous times that it is the Administrative Law Judge who has the duty to fully and fairly develop the record, even if a claimant is represented by counsel.

> The Secretary acknowledges that it is her " 'duty to develop the record fully and fairly, even if ... the claimant is represented by counsel.' " *Boyd v. Sullivan*, 960 F.2d 733, 736 (8th Cir.1992) (quoting *Warner v. Heckler*, 722 F.2d 428, 431 (8th Cir.1983)). This is so because an administrative hearing is not an adversarial proceeding. *Henrie v. Dept. of Health & Human Serv.*, 13 F.3d 359, 361 (10th Cir.1993). "[T]he goals of the Secretary and the advocates should be the same: that deserving claimants who apply for benefits receive justice."

*Battles v. Chater*, 36 F.3d. 43, 44 (8th Cir. 1994).

We do not believe the evidence in the record is so strong, at this point, to order an award of benefits. Rather, the case will be remanded to the Commissioner for testing to settle the question of Wilcutts' literacy. Tests such as the Wechsler Individual Achievement Test (WIAT), the Wide Range Achievement Test 3 (WRAT3), or the Woodcock-Johnson Psychoeducational Battery - Revised: Tests of Achievement (WJ-R ACH), are designed to measure people's ability to, among other things, read and write. Otfried Spreen & Esther Strauss, A Compendium of Neuropsychological Tests, Administration, Norms, and Commentary 161-166, (2d ed. 1998).

In our opinion, the second ALJ failed to require the Commissioner to meet his burden of proving that Wilcutts has the ability to read. On remand, the Administrative Law Judge shall order an examination by a mental health professional who is qualified to establish how well Wilcutts is able to read and write. Thereafter, it may be necessary for the Administrative Law Judge to consult a vocational expert to determine if work exists in significant numbers in the national economy given Wilcutts' ability to read and write as well as the other considerations relevant to the fifth step of the sequential evaluation. 20 C.F.R. § 404. 920.

We remand this case to the District Court with directions to remand the case to the Commissioner for proceedings consistent with this opinion and for a new administrative decision.

A true copy.

Attest:

   CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT