**Harold YAW, Plaintiff,**

v.

**Kenneth S. APFEL,[1] Commissioner of Social Security, Defendant.**

**Civil No. 4–97–CV–90516.**

United States District Court,
S.D. Iowa,
Central Division.

June 23, 1998.

1.  President Clinton appointed Kenneth S. Apfel to serve as Acting Commissioner of Social Security, effective September, 29, 1997, to succeed John J. Callahan. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Kenneth S. Apfel is hereby substituted for John J. Callahan as defendant in this action.

Gregory W. Peterson, Des Moines, IA, for Plaintiff.

Inga Bumbary–Langston, Asst. U.S. Atty., Des Moines, IA, for Defendant.

## MEMORANDUM OPINION AND ORDER

PRATT, District Judge.

Plaintiff, Harold Yaw, filed a Complaint in this Court on July 31, 1997, seeking review of the Commissioner's decision to deny his claim for Social Security benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* This Court may review a final decision by the Commissioner. 42 U.S.C. § 405(g). For the reasons set out herein, the decision of the Commissioner is reversed.

### BACKGROUND

Plaintiff filed his applications for benefits December 20, 1994. Tr. at 333–339. Plaintiff had made applications for benefits on February 12, 1993 (Tr. at 290–296) and August 19, 1991 (Tr. at 94–97), both of which were denied. The Administrative Law Judge held that the decisions to deny the earlier applications were final and binding on the parties. The Commissioner correctly points out that under the doctrine of *res judicata,* the Court is without jurisdiction to consider whether Plaintiff was disabled during the time covered by the prior applications. *Califano v. Sanders,* 430 U.S. 99, 107–08, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977).

After a hearing in front of Administrative Law Judge John P. Johnson (ALJ) (Tr. at 58–88), a Notice of Decision—Unfavorable was issued on June 28, 1996. Tr. at 25–48. A request for review by the Appeals Council was denied July 20, 1997. Tr. at 4–5. This appeal followed.

On January 25, 1991, Plaintiff sustained an injury to his back when he fell approximately 20 feet from a ladder at work. Plaintiff was told that he had a crushed vertebra and two fractured ribs. On February 15, 1991, Marshall Flapan, M.D. opined that Plaintiff should be able to return to work about March 1, 1991. Tr. at 176. An X-ray report, dated February 18, 1991, reads: "Lumbar vertebral bodies are of normal height and alignment. Disc spaces are intact. No spondylolisthesis or spondylolysis is seen. Although the lumbar vertebral bodies are intact, a compression fracture of T–12 is seen, with minimal loss of vertebral body height." Tr. at 178. A report of a bone scan, taken on February 20, 1991 states: "Fractures of the body of T11 and T12 which correspond to the plain film findings." Tr. at 181. On March 6, 1991, Kirk Green, D.O. opined that, although Plaintiff was unable to return to heavy work, he would be able to do sedentary work if such were available. Dr. Green also stated that he anticipated Plaintiff would be able to do heavy work within 1–3 months. Tr. at 183. After an examination, Mark R. Young, M.D. opined that there were "no objective findings at this time to support the extent of his injury." Tr. at 187.

Plaintiff was seen for a psychological examination by Ken Hayes, M.A. on October 31, 1991, at the request of Disability Determination Services. Tr. at 195–199. Plaintiff stated that he spent most of his days getting out of bed, laying on the couch, watching TV and then going back to sleep. Tr. at 196. On the Wechsler Adult Intelligence—Revised (WAIS–R). Plaintiff achieved a verbal IQ of 80, A performance IQ of 82, and a full scale IQ of 81. These scores were consistent with the ability to function in the borderline to low average range of intelligence. Tr. at 198. The psychologist wrote: "Based on the WAIS–R, it is quite evident that Mr. Yaw should be able to remember and understand auditorially presented instructions, procedures, and locations just as long as these instructions are no more than two to three steps and do not involve a high degree of abstract elaboration." Tr. at 199.

Plaintiff was seen at the University of Iowa Hospitals and Clinics on March 15,

1993. An MRI scan was essentially normal. Although Plaintiff complained of back and lower extremity numbness and weakness as well as pain, Vincent C. Traynelis, M.D. wrote that he was unable to determine what was causing the pain. Tr. at 417. On March 17, 1994, Dr. Traynelis wrote that Plaintiff should limit his lifting to 25 pounds and that he should not carry any weights greater than 10 pounds. The doctor said that Plaintiff should not sit longer than 30 minutes and that he should avoid bending and stooping. "It is more difficult to state how much Mr. Yaw should stand or walk because many times with this sort of activity if he does not have to carry anything it will not cause pain." Tr. 424.

Plaintiff was seen by James E. Mansour, M.D. for an examination at the request of Disability Determination Services on January 17, 1995. Tr. at 428–431. Dr. Mansour noted that Plaintiff's gait was abnormal. He said that even when Plaintiff did not know he was being observed, he walked with a limp. The doctor's examination revealed decreased range of motion in several areas, including the left shoulder, hip and waist. After his examination, Dr. Mansour wrote: "I would consider him reasonably disabled." Tr. at 429.

Plaintiff sought the services of the Iowa Department of Vocational rehabilitation in December, 1993. Tr. at 453–572. After an extensive evaluation, Jean Walker, a counselor at the Department, wrote:

> We do not see him as being capable of substantial gainful employment, and would recommend strongly that he receive assistance which will allow him to receive medical follow-up and treatment which may help him in the future as he continues his rehabilitation programming. He is a very destitute and deserving man, who sincerely wants to work and does not like to be in the situation he finds himself, and yet because of all the factors mentioned in the D–2, is unable to work at this time.

Tr. at 462. During the evaluation, "it was painfully apparent, that Harold appeared depressed, and very much uncomfortable with his life situation, as well as being physically uncomfortable because of his pain." Tr. at 458.

As a part of his evaluation at the Department of Vocational Rehabilitation, Plaintiff was seen by Dee E. Wright, Ph.D. on January 3, 1994. Tr. at 547–549. Dr. Wright stated that Plaintiff "appears to be manifesting symptoms consistent with a major depression. Underlying dysthymic considerations will also need to be ruled out. There are also Axis II considerations which will need further examination. His prognosis would be considered guarded." Tr. at 548. Dr. Wright wrote:

> Mr. Yaw does appear to be manifesting a number of psychological restrictions which will make vocational placement difficult. He has moderate restrictions intellectually and would have great difficulty performing complex cognitive activity that would require proficient reading and written language skills. In addition, he would most probably have difficulty attending to simple, repetitive, and routine cognitive activity given his current difficulties with sustained concentration and attention. He would probably have difficulties sustaining a routine in most work settings that required any rate and pace considerations.

Tr. at 549. On February 3, 1995, Steven G. Warner, Ph.D., completed a Psychiatric Review Technique form for Disability Determination Services, the agency which reviews disability claims at the initial and reconsideration stages of the application process. Dr. Warner opined, among other things, that Plaintiff would often have "deficiencies of concentration, persistence or pace resulting in failure to complete tasks in a timely manner in work settings or elsewhere." Tr. at 331. A Mental Residual Functional Capacity Assessment form completed by Carole Kazmierski, Ph.D. (Tr. at 419–421) indicates that Plaintiff is moderately limited in the ability to understand and remember detailed instructions; the ability to carry out detailed instructions; the ability to sustain an ordinary routine without special supervision; the ability to complete a normal work-day and workweek with out interruptions *from psychologically based symptoms* and to perform at a consistent pace without an unreasonable number and length of rest periods; and, the ability to respond appropriately to changes in

the work setting. (Emphasis in original) Tr. at 419–420.

Plaintiff appeared and testified at an administrative hearing on February 20, 1996. Tr. at 58–88. After Plaintiff testified, the ALJ called vocational expert Jeff L. Johnson (VE) to testify. The ALJ asked the following hypothetical.

My first assumption is that we have an individual who is currently 50 years old. He will be 51 years old as of April 27. He was 49 years old as of the date last insured for Title II benefits, and 45 years old as of the alleged onset of disability. He's a male. He has a limited education, and past relevant work as a dye setter and framer, and he has the following impairments: He is status post compression fracture of the 11th and 12th thoracic vertebra with complaints of back and leg pain; medically determinable impairment resulting in complaints of pain of the left shoulder and arm. He's status post left rib fractures. He has borderline to low average intelligence and a history of depression, and as a result of a combination of those impairments, he has the physical and mental capacity to perform work related activities except for lifting of no more than 20 pounds; routinely lifting 10 pounds; with no standing of more than 60 minutes at a time; no sitting of more than 60 minutes at a time; with no walking of more than two to three blocks at a time. This individual should do no repetitive bending, stooping, squatting, kneeling, crawling or climbing. He is not able to do very complex or technical work, but is able to do more than simple routine, repetitive work that does not rely on written material and does not require close constant attention to detail. He does require occasional supervision, and he should work at no more than a regular pace, using three speeds of pace, being fast, regular, and slow.

Tr. at 82–83. In response, the VE testified that Plaintiff would not be able to return to any of his past relevant work, that he would have no transferable skills, but that there is unskilled work that could be done within the limits of the hypothetical. Tr. at 83.

In his decision of June 28, 1996, the ALJ found, among other things, that Plaintiff has severe impairments which prevent him from returning to his past relevant work but that he has the residual functional capacity to do unskilled jobs such as locker room attendant, surveillance system monitor, light production assembler and office helper. Tr. 36–37. The ALJ found that Plaintiff is not disabled and that he is not entitled to the benefits for which he applied. Tr. at 38. On a Psychiatric Review Technique Form attached to his decision, the ALJ indicated that Plaintiff suffers from an Affective Disorder as well as Mental Retardation and Autism. Tr. at 39. On part B of the form, the ALJ stated that Plaintiff often has deficiencies of concentration, persistence or pace resulting in failure to complete tasks in a timely manner (in work settings or elsewhere). Tr. at 47.

## DISCUSSION

### STANDARD OF REVIEW

In reviewing administrative decisions, it is the duty of the Court to evaluate all of the evidence in the record, taking into account whatever in the record fairly detracts from the ALJ's decision. *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 71 S.Ct. 456, 464–65, 95 L.Ed. 456 (1951); *Piercy v. Bowen*, 835 F.2d 190, 191 (8th Cir.1987). *Easter v. Bowen*, 867 F.2d 1128, 1131 (8th Cir.1989). In *Bradley v. Bowen*, 660 F.Supp. 276, 279 (W.D.Ark.1987) the court, Richard S. Arnold, Circuit Judge sitting by designation, wrote:

The standard of review of an administrative adjudication is whether it is supported by substantial evidence on the record as a whole. This is somewhat more probing than the "substantial evidence" test which is used by an appellate court when reviewing the fact-finding of a jury. *Gavin v. Heckler*, 811 F.2d 1195, 1199 (8th Cir. 1987). While this Court will not second-guess a reasonable choice between two fairly conflicting views of the evidence (even if the Court, proceeding de novo, would have preferred the other choice), it will canvass the entire record to ensure that the ALJ in fact made such a reasonable choice. *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 71 S.Ct. 456, 464–65, 95 L.Ed. 456 (1951). Thus, it is

not enough for the reviewing court simply to search the record for some evidence which will support the ALJ's conclusion. *Parsons v. Heckler*, 739 F.2d 1334, 1339 (8th Cir.1984). The Court must also review that evidence which "fairly detracts" from the ALJ's conclusion. *Universal Camera*, 340 U.S. at 488, 71 S.Ct. at 464. The weighing of conflicting evidence is generally a matter of fact-finding for the ALJ, and will not be disturbed on review if the result is one which " 'a reasonable mind might accept as adequate to support a conclusion.' " *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420,1427, 28 L.Ed.2d 842 (1971), quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938). But there are occasions when the bulk of the evidence is transparently one-sided against the ALJ's decision. In those instances, the reviewing court must reverse the administrative determination on the ground of unreasonableness. See *Gavin*, 811 F.2d at 1199–1201, and see generally, *Deuter v. Schweiker*, 568 F.Supp. 1414 (N.D.Ill.1983).

█ In short, a reviewing court should neither consider a claim de novo, nor abdicate its function to carefully analyze the entire record. *Wilcutts v. Apfel*, 143 F.3d 1134, 1136–37 (8th Cir.[Mo.]) citing *Brinker v. Weinberger*, 522 F.2d 13, 16 (8th Cir.1975).

### BURDEN OF PROOF

The ALJ found that Plaintiff is unable to return to his past relevant work. Thereafter, the ALJ recognized that the burden of proof had shifted to the Commissioner. In so doing, the ALJ cited *Talbott v. Bowen*, 821 F.2d 511 (8th Cir.1987). Tr. at 35. In *Talbott* then Chief Judge Lay wrote:

If the ALJ finds that the claimant cannot return to his past relevant work, the burden of proof shifts to the [Commissioner], who then has the duty to establish that the claimant is not disabled within the meaning of the Act.

.  .  .  .  .

In presenting evidence that a claimant is not disabled, the [Commissioner] must prove by medical evidence that the claimant has the residual functional capacity to do other kinds of work and that there are jobs available in the national economy that realistically suit the claimant. *O'Leary v. Schweiker*, 710 F.2d 1334, 1338 (8th Cir. 1983). "In determining whether there are job available that a claimant can perform, the [Commissioner] must consider the claimant's exertional and nonexertional impairments, together with the claimant's age, education, and previous work experience." *Id.*

*Talbott* at 514–15.

█ In addition to proving with medical evidence that the claimant has a residual functional capacity to work, the Commissioner · must also prove that jobs exist in the national economy that the claimant is able to perform. In cases where the claimant suffers from non-exertional impairments, such as pain or depression, the existence of jobs is proved with testimony of a vocational expert in response to a hypothetical question that precisely sets forth all of the claimant's impairments and limitations. *Ness v. Sullivan*, 904 F.2d 432, 436 (8th Cir.1990).

In the case at bar, the ALJ's hypothetical adequately describes Plaintiff's physical limitations. The limitations caused by Plaintiff's depression, however, are in marked contrast to the medical evidence as well as the observations of the Department of Vocational Rehabilitation. Dr. Wright opined that Plaintiff "would most probably have difficulty attending to simple, repetitive, and routine cognitive activity given his current difficulties with sustained concentration and attention." Tr. at 549. The ALJ, on the other hand, found that Plaintiff is able to "do more than simple, routine, repetitive work ..." Tr. at 37. Dr. Wright opined that Plaintiff would "have difficulties sustaining a routine in most work settings that required *any* rate and pace consideration." Tr. at 549. In contrast, the ALJ found that Plaintiff could work at a regular pace. Tr. at 37. Dr. Wright's opinion is uncontradicted by any evidence in the record. Furthermore, his opinion is consistent with the opinions of Dr. Warner (Tr. at 331) and the ALJ himself (Tr. at 47) who both stated that Plaintiff would often fail to complete tasks in a timely manner because of deficiencies of concentration, persistence or pace. Dr. Wright's opinion is also consistent

with Dr. Kazmierski's opinion that Plaintiff's psychologically based symptoms would cause moderate limitation in his ability to complete a normal work day and work week (Tr. at 420), or that he could not sustain an ordinary routine without special supervision (Tr. at 419). Finally, Dr. Wright's opinion is supported by the determination of the Iowa Department of Vocational Rehabilitation that Plaintiff is unable to work. "We do not see him as being capable of substantial gainful employment..." Tr. at 462. It is well settled Eighth Circuit case law that an ALJ is not permitted to substitute his judgment for that of a physician. *Pratt v. Sullivan,* 956 F.2d 830, 834 (8th Cir.1992); *Delrosa v. Sullivan,* 922 F.2d 480, 484–85 (8th Cir.1991). Dr. Wright is not a physician. He is, however, a licenced psychologist and an acceptable source of medical opinion. 20 C.F.R. § 404.1513(a). Although the ALJ found that Plaintiff suffers from "a history of depression" (Tr. at 41), there is no medical evidence whatsoever that would support a finding that Plaintiff's depression has, in any way, improved.

## CONCLUSION AND REMEDY

 In this case, the ALJ found that Plaintiff is unable to do his past relevant work because of severe impairments that do not meet or equal a listed impairment. The Commissioner did not meet his burden of proving either that Plaintiff has a residual functional capacity for work, or that jobs exist that he is able to do. The Court finds that the evidence is transparently one sided against the ALJ's decision. The medical evidence establishes that, although Plaintiff may have the residual functional capacity to function in work activity from a physical standpoint, his mental residual functional capacity is nil. The detailed report from the Iowa Department of Vocational rehabilitation establishes that no jobs exist that Plaintiff would be able to perform in his impaired condition. The Court also finds that a remand to obtain additional medical evidence, or to take further testimony from a vocational expert, would only delay the receipt of benefits to which Plaintiff is entitled. According to the ALJ, Plaintiff was insured for Title II benefits until June 30, 1994. Tr. at 36. Dr. Wright's evaluation took place on

January 3, 1994. Likewise, the opinion that Plaintiff was not capable of substantial gainful employment, by the counselor at the Iowa Department of Vocational Rehabilitation, was rendered January 26, 1994, based on an evaluation in December, 1993. Plaintiff has clearly established the onset of disability during the time he was insured for disability benefits. Therefore, the appropriate remedy is reversal with an award of benefits. *Talbott* at 515; *Gavin v. Heckler,* 811 F.2d 1195, 1201 (8th Cir.1987).

Defendant's motion to affirm the Commissioner is denied. This cause is remanded to the Commissioner for computation and payment of benefits.

The judgment to be entered will trigger the running of the time in which to file an application for attorney's fees under 28 U.S.C. § 2412(d)(1)(B) (Equal Access to Justice Act). *See Shalala v. Schaefer,* 509 U.S. 292, 113 S.Ct. 2625, 125 L.Ed.2d 239 (1993)